Brady HARDEN, et al., Plaintiffs,

v.

Officer Richard PECK, et al.,
Defendants.

No. 87 C 4180.

United States District Court,
N.D. Illinois, E.D.

April 11, 1988.

Willis Brown, Chicago, Ill., for plaintiffs.

Terence Moran, Asst. Corp. Counsel, City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

The plaintiffs, Brady Harden, Bertha Harden and Michelle Harden[1], filed an amended complaint against the defendants, all of whom are Chicago police officers, seeking compensatory damages under 42 U.S.C. sec. 1983 for alleged violations of their constitutional rights as secured by the fourth, sixth[2], and fourteenth amendments to the United States Constitution. The defendants, Officers Richard Peck ("Peck"), Erasmo Rodriguez ("Rodriguez"), Kathleen Brannigan ("Brannigan") and Claude Posilovich ("Posilovich"), have moved to dismiss the plaintiffs' amended complaint under Fed.R.Civ.P. 12(b)(6). Because the defendants' motion contains materials outside of the four corners of the amended complaint, we will treat it as a motion for summary judgment under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b).

## I. BACKGROUND

### A. *Procedural History*

Originally, four plaintiffs, the Hardens and Willie Ray Turley ("Turley"), filed a three count complaint against eight defendants: the City of Chicago, Fred Rice, Officer John Klunk[3], an unidentified police informant (the "Informant") and the four police officers who bring this motion. Count I contained a sec. 1983 claim alleging that the defendants had conducted an illegal search of the Hardens' home and had illegally arrested Brady Harden. In Count II, Turley alleged that the police unlawfully seized his handgun during the search. Count III set forth a similar claim by Harden regarding a pistol of which he had custody.

On May 22, 1987, the court[4], *sua sponte*, dismissed the City and Rice as defendants because the plaintiffs had not alleged that Rice had engaged in any wrongdoing, and that they erroneously relied on a theory of respondeat superior to hold the City liable. The court also dismissed Turley's claim (Count II) because it was linked improperly to Count I. *See* Memorandum Order (May 22, 1987) (Shadur, J.). On June 18, 1987, after receiving the defendants' initial motion to dismiss, the court dismissed the

---

1. Because the events set forth in the amended complaint most closely relate to Brady Harden, our use of the name "Harden" throughout this opinion refers only to Brady Harden.

2. Although plaintiffs conclude that their sixth amendment rights have been violated, they allege no facts which suggest—even remotely—how such violations were effected. Perhaps Harden alludes to the fact that he was not represented by counsel during his processing at the police station after he was arrested; or that he was subjected to police interrogation after being taken into custody without counsel being present.

   We need not speculate, however, because the record before us precludes us from deciding this constitutional issue. It is a cardinal rule of judicial restraint that constitutional issues require specific records for resolution. *See, e.g., Felder v. McCotter,* 765 F.2d 1245, 1251 (5th Cir.1985). It would not be inaccurate to state that there is *no* record before us with respect to Harden's sixth amendment claims; and Harden cannot plausibly suggest that he was denied the

opportunity to develop his record. Harden has now faced two motions to dismiss (and we have converted this most recent one into a motion for summary judgment) but has not yet spilled one drop of ink over his sixth amendment claims. Under these circumstances, we believe that it would be highly inappropriate to decide this constitutional issue.

   If Harden can be said to have done anything at all regarding his sixth amendment claims, it is that he has abandoned them. *See Pincham v. The Illinois Judicial Inquiry Board,* 681 F.Supp. 1309, 1312 n. 2 (N.D.Ill.1988) (Rovner, J.). Therefore, these claims are dismissed.

3. It is undisputed that Officer Klunk is no longer employed by the Chicago Police Department and has never been served with process in this action. Since the 120 day limit for effecting service has long passed, *see* Fed.R.Civ.P. 4(j), Officer Klunk is dismissed as a defendant from this case.

4. At this time the matter was before Judge Shadur.

remaining portions of the complaint under Rule 12(b)(6). The court held that Count I failed to state a claim because it did not contain an allegation that the defendants (that is, the police officers who conducted the search) lacked probable cause to search the plaintiffs' home; and Count III was dismissed apparently because Harden failed to comply with notice requirements under Illinois law. The court granted the plaintiffs 28 days in which to file an amended complaint, but emphasized that such re-filing should be done only if the plaintiffs' attorney was satisfied that he could do so in compliance with Rule 11. Transcript of Proceedings before Judge Shadur, at 6 (June 18, 1987).

The plaintiffs filed their amended complaint on July 17, and the defendants once again moved to dismiss pursuant to Rule 12(b)(6). After the motion was fully briefed, we reviewed it and discovered that the defendants had submitted documents (namely, Peck's complaint for search warrant and the search warrant) which were not contained in or attached to (see Fed.R. Civ.P. 10(c)) the amended complaint. Accordingly, on October 2, 1987, we notified the parties that we would treat the defendants' 12(b)(6) motion as a motion for summary judgment under Rule 56, and we ordered the parties to submit all relevant materials to the court on or before October 16.

The plaintiffs then sought to depose Peck and the Informant. The defendants immediately moved for a protective order to prevent both depositions. We granted the protective order with respect to the Informant, but allowed the plaintiffs to depose Peck. However, we entered an order preventing the plaintiffs' attorney from asking Peck questions which could lead to the discovery of the Informant's identity. Peck's deposition was taken on December 11, 1987.

The plaintiffs, despite having been granted two previous extensions of time, were unable to meet their December 30 deadline and moved for yet a third extension of time. We allowed them until January 29, 1988. We also made very clear, however, that no further extensions would be granted, and that no exceptions would be made for late filing. The plaintiffs, of course, did not file their materials (a transcript of Peck's deposition and a brief restatement of their legal position) until February 2, 1988.

### B. *Facts*

On May 2, 1985, Peck held a conversation with the Informant, who in the preceding three months had provided him with information "relative to the Illinois Controlled Substance Act on at least three separate occasions", each of which led to the recovery of illegal narcotics and at least one arrest. The Informant told Peck that he had (that same day) gone to Harden's home at 12024 South Justine in Chicago, where he purchased $100 worth of cocaine from Harden. The Informant also told Peck that he knew the substance was cocaine because he "snorted" it, and that Harden was still in possession of a quantity of cocaine when he left Harden's home. Peck then conducted a "utility check", by which he determined that Harden was the owner of the home located at 12024 South Justine; he also ran a background investigation of Harden, and discovered that Harden had no prior arrests or convictions.

Based on this information, on May 3, 1985, Peck swore out a complaint for search warrant and an affidavit (the "Affidavit") in support of the complaint. The complaint for search warrant sought to search Brady Harden:

> and the entire house located at 12024 S. Justine, City of Chicago, County of Cook, State of Illinois and seize * * * [a] quantity of cocaine and all other narcotics in violation of the Illinois Controlled Substance Act. Proof of residency, Identification and those instrumentalities that constitute evidence of this offence (sic) which have been used in the commission of, or which constitute evidence of the offense of Possession of [a] Controlled Substance.

Approximately one hour later, Judge John Morrissey of the Illinois Circuit Court issued a search warrant authorizing the

search of "Brady Harden" and "the entire house located at 12024 S. Justine, Chicago, Illinois County of Cook, State of Illinois" in order to recover "cocaine and all other narcotics" in the house.

On May 6, 1985, the defendants (and Officer Klunk) executed the search warrant. Although the police discovered no narcotics, they did find two handguns. Harden was arrested and charged with unlawful possession of weapons, but the charge was subsequently dismissed at trial; and the Hardens took the offensive.

## C. *Allegations in the Amended Complaint*

The plaintiffs allege that the search of their home violated their fourth amendment right to be free from unreasonable searches and seizures. Essentially, the plaintiffs claim that the search violated their constitutional rights for two reasons. First, they allege that Peck's Affidavit did not contain factual allegations sufficient to establish probable cause. In support of this position, the plaintiffs state that:

(1) Peck's Affidavit did not allege with sufficient specificity where in Harden's home the narcotics could be found;

(2) Peck failed to supply information which corroborated the information he received from the Informant; and

(3) the Informant "lacked the creditability to be relied upon in presenting evidence for obtaining a search warrant."

Given these defects, the plaintiffs contend that Peck, "in his capacity as an experienced police officer[,] possessed information which he knew or should have known was insufficient to establish probable cause." Plaintiffs' Response to Defendants' Motion to Dismiss, at 4.

Second, the plaintiffs, in their Response to our Rule 56 Notice, suggest (they do not argue) that *no* informant provided Peck with information about Harden; rather, the plaintiffs hint that Peck intentionally misrepresented the facts contained in the Affidavit in order to obtain a search warrant for Harden's home. Plaintiffs' Response to Court's Rule 56 Notice, at 4.

## II. DISCUSSION

The defendants contend that they are entitled to judgment as a matter of law because: (1) Peck is immune from suit under the doctrine of qualified immunity; and (2) the plaintiffs have made no allegations of wrongdoing against Rodriguez, Brannigan or Posilovich. The plaintiffs, predictably, do not take the same view of the matter. We therefore turn to each of these issues.

## A. *Peck: Qualified Immunity*

The plaintiffs argue that Peck is not entitled to qualified immunity for two reasons: first, because no reasonably competent police officer in Peck's position would have concluded that the factual allegations set forth in Peck's Affidavit were sufficient to establish probable cause; and second, because Peck made deliberate misstatements of fact in his Affidavit in support of the complaint for search warrant. We think it would be helpful to address these claims separately.

### 1. The Sufficiency of Peck's Affidavit

In *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), the Supreme Court held that a police officer who applies for and obtains an arrest warrant [5] "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on the issue, immunity should be recognized." According to the Court, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, * * * will the shield of immunity be lost." *Id.* at 344–45, 106 S.Ct. at 1098.[6]

---

5. The Court noted that the same analysis would apply to applications for search warrants. *Malley*, 475 U.S. at 344 n. 6, 106 S.Ct. at 1098 n. 6.

6. The application of the objective reasonableness test (first recognized in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) to the warrant procurement process has

Applying the standard set forth in *Malley* to this case, we have no doubt that Peck is entitled to qualified immunity. The factual allegations in Peck's Affidavit clearly are sufficient to establish probable cause to believe that Harden had sold and was still in the possession of cocaine. Peck received the information contained in his Affidavit from a person (the Informant) whom Peck had known for two years, and who had provided Peck with reliable information on three separate occasions in the previous three months. The Informant told Peck that he had gone to Harden's home at 12024 S. Justine in Chicago that same day and purchased $100 worth of cocaine from Harden; he also told Peck that Harden was still in possession of a quantity of cocaine when he left.[7] Whatever else one might say about Peck's Affidavit, it certainly cannot be maintained that it was "so lacking in indicia of probable cause as to render [Peck's] belief in its existence unreasonable * * *." *Malley*, 475 U.S. at 344, 106 S.Ct. at 1098. Therefore, we believe Peck is entitled to qualified immunity.

The plaintiffs, however, offer six objections. All are without merit. First, they argue that Peck knew or should have known that the facts contained in his Affidavit were insufficient to establish probable cause because the Informant "lacked creditability." Presumably the plaintiffs' reason that the Informant was unreliable based on the fact that his tip about Harden bore no resulting fruit. Even if this were true, the plaintiffs have offered no support for their claim that *Peck* should have known the Informant was unreliable—and that is the link in the legal chain that they must establish. Thus, while it is true that the search executed pursuant to the warrant uncovered no narcotics, it is also true that this fact alone does not demonstrate that Peck should have known that the Informant was unreliable at the time he re-

ceived the information. We believe this conclusion follows from the well established rule that an arrest or search warrant is not unlawful merely because the information upon which it is based is later determined to be inaccurate. *See, e.g., Olson v. Tyler*, 771 F.2d 277, 280 (7th Cir.1985). Nor is an improper search made lawful because an unreliable source provides, in one case, information that turns out to be true. Hindsight, always perfect, does not render a search reasonable or unreasonable. Reasonableness takes foresight as its perspective. It is not unreasonable for a police officer to treat as reliable an informant who in the past has provided him with the truth. Indeed, to require otherwise would itself be unreasonable. Police officers are neither soothsayers nor guarantors of truth.

The plaintiffs also take issue with Peck's Affidavit because, although it alleges that Harden kept cocaine in his house, it does not allege precisely where in Harden's house it was being kept. The plaintiffs would require a high degree of specificity in the warrant description, higher than we believe is reasonable. The fourth amendment, it is true, requires that a warrant "particularly describ[e] the place to be searched"; it does not, however, demand the degree of specificity urged by the plaintiffs. *See* 2 La Fave, *Searches and Seizures* sec. 4.5(a) (1987) ("As to premises in an urban area, the most common practice is to identify the place by street address, which is sufficient"); *accord* 1 Ringel, *Searches and Seizures, Arrests and Confessions* sec. 5.5(a) (1986). Such a standard would be unreasonable—and "reasonableness" is all the fourth amendment requires.

It is apparent we do not believe that Peck's Affidavit failed to meet the fourth amendment's particularity requirement. But even if we did, it would be of little assistance to the plaintiffs in this case: in

---

been both the target of criticism, *see* Note, *Police Immunity From Civil Suit—Malley v. Briggs*, 20 Creighton L.Rev. 193 (1986), and the object of praise. *See* Note, Malley v. Briggs: *Application of the* Harlow *Objective Reasonableness Test to Section 1983 Liability for Police Officers*, 29 Ariz.L.Rev. 333 (1987).

7. The Informant knew that the substance he purchased from Harden was cocaine because he "snorted" it and "verified" that it was in fact cocaine.

order to prevail against Peck, the plaintiffs must establish not only that his description of the location of the drugs violated the fourth amendment, but that no reasonably competent officer in Peck's position could have concluded that it met constitutional muster. The plaintiffs have not made such a showing.

■ The plaintiffs' next objection relates to the fact that there was a three day delay between the date the search warrant was issued (May 3) and the date it was executed (May 6). Though they do not say so, the plaintiffs implicitly claim that the delay allowed the warrant to become "stale", and thus rendered the search constitutionally defective. A three day delay in the execution of a search warrant does not automatically establish that the search was unconstitutional. *See* 2 La Fave, *Searches and Seizures* sec. 4.7(a) (1987). The issue is not what amount of time has elapsed between the issuance and execution of the search warrant; but rather whether the period of delay in execution is such that the information supplied to the judicial officer no longer establishes probable cause. If so, then the resulting search is unconstitutional. Once again, however, the issue must be recast to fit this case: whether a reasonably competent police officer in Peck's position (as well as the other defendants) could only have concluded that the period of delay had allowed the warrant to grow stale. We believe that a reasonably competent police officer could have concluded (as did Peck and the other officers who executed the warrant) that the warrant was not stale when it was executed three days after issuance.[8]

■ Next in the plaintiffs' list of challenges is their assertion that the search warrant should not have been issued without the judicial officer examining the Informant, or without the Informant presenting the bag of cocaine. In *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), and *Jones v. United States*, 362 U.S. 257, 271–72, 80

S.Ct. 725, 736–37, 4 L.Ed.2d 697 (1960), the Supreme Court held that a police officer need not disclose an informant's identity in applying for an arrest or search warrant. A corollary of this rule, we believe, is that a police officer need not produce an informant at the hearing on a search warrant application.

The plaintiffs' fifth contention is a pale variation of their first. In *Baskin v. Parker*, 602 F.2d 1205 (5th Cir.1979), the Fifth Circuit observed that a law enforcement officer lacks probable cause to obtain search warrants where he knows or should know that the information supplied to him was based upon the informant's personal grievances. Relying on *Baskin*, the plaintiffs suggest that the search warrant Peck obtained was invalid because the information that Peck received was not creditable. For the reasons we stated above, we find the plaintiffs' assertion that Peck knew or should have known that the Informant was unreliable is without merit. As for *Baskin*, we have little comment other than that it is wholly inapplicable to this case. There is no indication that the Informant harbored any grudge against Harden; nor do the plaintiffs offer any facts to support the conclusion that Peck knew or should have known of the existence of such a grudge.

Finally, the plaintiffs intimate that Peck should have conducted an investigation to verify the information he received from the Informant before applying for the search warrant. This attack was rejected by the Seventh Circuit in *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 440 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987), in which the court reasoned that the Supreme Court "has never suggested that the police, with * * * information in hand, must conduct a further investigation or put contradictory evidence into the affidavit."

## 2. Fraud in the Warrant Procurement Process

■ The plaintiffs also alert us to the fact that "a Police Officer is liable for his

---

**8.** Under Ill.Rev.Stat. ch. 38, par. 108–6 (1987), warrants must be "executed within 96 hours from the time of issuance." Fed.R.Crim.P. 41(c)(1) allows a "period of time not to exceed

10 days" to execute a warrant. The search involved here was executed well within both of these statutory periods (though the federal period was not implicated).

actions where he intentionally misrepresented facts that were presented before a Judge in obtaining a search warrant * * *." Plaintiffs' Resp. to Court's Rule 56 Notice, at 3. Allegations of fraud in the warrant procurement process are serious; and therefore they must be treated with commensurate gravity, and then only when they are properly presented to the court. Here, the plaintiffs have made no allegations *in their amended complaint* that Peck deliberately concocted falsehoods or acted with reckless disregard for the truth of the information he presented in his Affidavit; and such allegations are essential. *See Myers v. Morris,* 810 F.2d 1437, 1457 (8th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Fullman v. Graddick,* 739 F.2d 553, 562 (11th Cir.1984). Therefore, this contention fails.

Additionally, the plaintiffs have not sufficiently pressed this ground in their briefs. In a circumstance such as this, where the plaintiffs have made their argument "in so perfunctory and undeveloped a manner," *Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir.1984), we are entitled to disregard it; and we think it would be appropriate to do so here. *See National Metalcrafters, Div. of Keystone v. McNeil,* 784 F.2d 817, 825 (7th Cir.1986); *Fellhauer v. City of Geneva,* 673 F.Supp. 1445, 1449 n. 7 (N.D.Ill.1987) (Zagel, J.).

■ Finally, we believe this attack would fail even if the plaintiffs had included the requisite allegations and pressed it with fervor. An affidavit filed in support of a warrant application is presumptively valid; therefore, in order for a party successfully to challenge an affiant's veracity, he must make a "substantial preliminary showing" that the affiant deliberately made misstatements of material facts in, or deliberately omitted material facts from, the affidavit. *See, e.g., Perlman v. City of Chicago,* 801 F.2d 262, 264–65 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987); *Olson v. Tyler,* 825 F.2d 1116, 1119 n. 4 (7th Cir.1987); *Myers,* 810 F.2d at 1457. The plaintiffs have not met their burden.

The plaintiffs' attempt to overstep this high threshhold consists of their pointing to numerous "contradictions" between Peck's deposition testimony and the allegations in his Affidavit. Of these, only two require discussion.[9]

The plaintiffs advert to Peck's deposition at which he testified that "[t]he informant * * * did not tell [Peck] where the alleged narcotics were obtained, how much was paid, nor any other corroborating information relating to the alleged acquisition of drugs." Plaintiffs' Resp. to Court's Rule 56 Notice, at 3. The omissions are significant, according to the plaintiffs, because

[t]he search warrant that was filed by Officer Peck specifically stated with more specificity that the confidential informant told him that he purchased cocaine in exchange for $100.00. [Peck] further stated that the informant snorted the cocaine and determined that it was, in fact, a narcotic drug due to the sensation he felt.

*Id.* Three points must be made. First, the fact that Peck failed to recall the precise details of information related to him some thirty months before does not, in our view, justify the inference that he deliberately misled the judicial officer. Even if it was probative of deception, it certainly would not satisfy the "substantial" preliminary showing requirement.

Second, a careful reading of Peck's deposition transcript does not support the plain-

---

**9.** Some of the alleged "contradictions" are not contradictions at all. Rather, they are mere assertions of inconsistencies that the plaintiffs believe undercut Peck's statement that a confidential informant in fact existed. These "contradictions" are that Peck: (1) stated that he believed whatever information he received from the Informant; (2) conducted a background check on Harden which revealed that Harden had no prior arrests; and (3) failed to conduct an investigation to verify the information he obtained from the Informant. While the first two assertions might with considerable strain suggest that Peck acted imprudently, by no stretch of the imagination can they be construed as evidence that Peck deliberately misled the judicial officer in the warrant application; the third fails for the reasons provided in sec. II(A)(1) above, *see Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 440 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987).

tiffs' claim that he was impeached regarding the amount of money involved. The relevant portion of the deposition reads as follows (at 52):

> Plaintiffs' counsel: Did you ask [the Informant] how much he paid for [the cocaine]?
>
> Officer Peck: I didn't ask him, no.

*This* question and *this* answer do not impeach Peck because they do not foreclose the possibility that the Informant *volunteered* the information to Peck; and without eliminating this possibility, we do not think that it is accurate to characterize Peck's statements as contradictory.

Third, we believe that the plaintiffs' suggestion that something is amiss because the Informant did not tell Peck "where" the cocaine was obtained is not only meritless, it comes very close to being sanctionable. Although it might be true that Peck could not specify the precise room in Harden's home in which Harden kept the cocaine, *see* Dep. Transcript at 50–51, he did recall the transaction occurred at Harden's house, *see id.* at 51. The tenor of the deposition transcript, however, leads us to conclude that the plaintiffs are arguing that no informant existed because Peck did not ask the Informant any number of questions designed to elicit from the Informant the specific room in which Harden kept the cocaine. We do not find this contention compelling. As we stated above, *see supra* at 1259–1260, Peck's Affidavit and the search warrant satisfied the fourth amendment's particularity requirement; there was no need for Peck to demand more specificity than he received. Therefore we reject this argument.

The second point we find more troubling. The plaintiffs state that Harden was not in Chicago on May 2, 1985 (*see* Affidavit of Bertha Harden, par. 4). (Because the plaintiffs do no more than state this fact, we take it upon ourselves to draw out its implications.) Thus, the argument continues, Peck could not have obtained his infor-

mation from the Informant; and this shows that Peck knowingly presented false information to the judicial officer in order to secure the search warrant. On the one hand, we find this unsettling because if in fact Harden was not in Chicago on the alleged date of the transaction with the Informant, it would support the plaintiffs' position that no informant existed (or that the informant was wrong). The remaining question would be whether this showing possessed the requisite substantiality to warrant further proceedings.[10] On the other hand, we would be extremely reluctant to disturb the confidential relationship that exists between Peck and the Informant based solely on the affidavit of Harden's wife, Bertha. We find it puzzling, for example, that Harden would not himself swear out an affidavit stating that he was out of town. At any event, we need not struggle over this troubling point because it has not been properly presented to us.

■ In fairness to the plaintiffs, however, it should be noted that, based upon the protective order we entered preserving the secrecy of the Informant's identity, they could not depose the Informant in order to determine whether Peck's Affidavit contains misstatements of fact. Nevertheless, our Court of Appeals has held that there is no constitutional right in a criminal case to the disclosure of an informant whose information leads to a finding of probable cause. *See United States ex rel. Cunningham v. DeRobertis,* 719 F.2d 892, 895 (7th Cir.1983), *relying on Mc Cray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). We therefore held that the plaintiffs here were not entitled to such disclosure in the civil context.

We hold that the Peck is protected from suit by the doctrine of qualified immunity.

**B.** *Officers Rodriguez, Brannigan and Posilovich*

■ The defendants also contend that the claims against Rodriguez, Brannigan and Posilovich must be dismissed because

---

**10.** This case thus differs from *United States v. Hornick,* 815 F.2d 1156, 1158–59 (7th Cir.1987), in which the court held that a criminal defendant failed to meet his substantial burden where he simply denied the informant's existence, and

supported it with his friend's affidavit and his attorney's "say-so". Here, as we have observed, the plaintiffs identify a specific fact which would cast doubt on the informant's existence.

there are no allegations of wrongdoing against them in the amended complaint. They are right. The only allegation made against these defendants is that they executed the search warrant and arrested Brady Harden. *See* Amended Complaint, pars. 5, 14. The plaintiffs' response bears repeating:

> The other police officers who participated in the raid and were named in the complaint should not be dismissed at this point due to the fact there have been no allegations as to their lack of participation in securing the warrant. The plaintiff at this time only has the information which was secured for purposes of defending him in criminal court to use as a basis for his complaint.

> The workings of each officer involved in the raid have not been disclosed. By such information it would show which officers should not be made parties to this cause of action. Until such allegations are made and proven (sic), *it should be assumed that all of the police officers conspired and participated along with Officer Peck* in presenting misleading information which led to the issuance of a search warrant that became the instrument of the violation of the Plaintiffs' constitutional rights.

Plaintiffs' Resp. to Motion to Dismiss, at 7 (emphasis supplied).

■ This response is no response at all. It presents what charitably might be described as the "Bubba Smith" approach to litigation: a plaintiff grabs as many defendants as possible, and then throws them out one by one until he finds the one with the violation. While this approach may be effective on the gridiron, it has no place in the courts. Not only is it wholly without merit, it runs far afoul of Rule 11, which "requires an attorney to make a reasonable inquiry into the factual and legal basis for the claims asserted." *In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir.1988). Here, the plaintiffs' response constitutes a virtual admission that the plaintiffs' attorney did not make reasonable (or perhaps any) inquiry into the factual basis for the claims against Rodriguez, Brannigan and Posilovich. We find this particularly disturbing in light of Judge Shadur's warning to the plaintiffs'

attorney to satisfy his Rule 11 obligation before filing an amended complaint. *See supra* at 1257.

As for the plaintiffs' suggestion that discovery is necessary to determine which defendants are proper, the Seventh Circuit has observed that "the need for discovery does not excuse the filing of a vacuous complaint. No matter how such inquiries come out, * * * courts must ask the right question: whether the side filing the pleading knew enough at the time * * *." *Frantz v. U.S. Powerlifting Federation*, 836 F.2d 1063, 1068 (7th Cir.1987). Given their response, it is evident that the plaintiffs did not know enough at the time they filed their amended complaint to assert claims against Rodriguez, Brannigan and Posilovich; their claims against these defendants are vacuous and therefore sanctionable.

Having determined that Rule 11 has been violated, we must, under the express terms of the Rule, impose a sanction. *Frantz*, 836 F.2d at 1065. In this case, we believe the proper sanction to impose on the plaintiffs is to require their attorney, Willis Brown, to pay to the City of Chicago the reasonable attorney's fees it has incurred responding to the claims against Rodriguez, Brannigan and Posilovich in the amended complaint. In so doing, we are confident that the defendants' attorney is aware that an excessive request for fees is itself a sanctionable event. *See In re Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir.1987).

### III. CONCLUSION

For the foregoing reasons the defendants' converted motion for summary judgment is GRANTED, and the clerk is directed to enter an order pursuant to Fed.R. Civ.P. 58 dismissing the entire action. Additionally, the defendants' motion for sanctions under Fed.R.Civ.P. 11 is GRANTED, and the defendants are directed to submit appropriate documentation consistent with sec. II(B) of this opinion.