**Althea B. NAZARENUS and Oliver A. Nazarenus, Plaintiffs,**

v.

**J.F. DALEY INTERNATIONAL, LTD. and Pikes Brothers, Inc., Defendants.**

No. 87 C 8668.

United States District Court, N.D. Illinois, E.D.

May 31, 1989.

Reconsideration Denied May 31, 1989.

Thomas J. McDonnell, Chicago, Ill., Timothy P. Matacio, Hinsdale, Ill., for plaintiffs.

Jay S. Judge, Jenna Lynn Schoeneman, Judge & Knight, Ltd., Park Ridge, Ill., James Bartlett, David A. Beck, Craig A. Moen, Orner & Wasserman, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM ORDER

ZAGEL, District Judge.

On September 28, 1988, we dismissed the plaintiffs' amended complaint against J.F.

Daley with prejudice and sanctions. Pikes Brothers, although it had answered the amended complaint, saw the light and also moved to dismiss the complaint on November 4; the plaintiffs responded on November 21. Several weeks later, on December 12, the plaintiffs filed a document styled "MOTION TO VACATE" requesting that we reconsider and vacate our September 28 order. It is a run-of-the-mill motion for reconsideration; but we mistook the motion as a request to dismiss the entire lawsuit voluntarily on the condition that we vacate our September 28 order. *See* Fed.R.Civ.P. 41(a)(2). We agreed to do so on the condition that the plaintiffs dismiss the entire action (against both defendants) with prejudice.

We now recognize our miscue and deny the plaintiffs' motion to reconsider.

We shall not revisit in detail the infirmities that plagued the plaintiffs' complaints (copies of our previous opinions are attached as appendices). But we will take time out to discuss the doctrine of "notice pleading", codified in the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 8 and Appendix of Forms.

In their memorandum in opposition to Pikes Brothers' motion to dismiss (which is attached to the plaintiffs' reconsideration motion), the plaintiffs make much ado about the fact that Pikes Brothers filed answers to the original and amended complaints: "[T]his is an indication that there were sufficient facts in both complaints to enable Pikes Brothers to answer." As framed by the plaintiffs the proposition is true (possibly even tautologous); but the fact that one has pleaded allegations which can be answered does not entail the conclusion that those allegations state a claim upon which relief can be granted. A vague and conclusory complaint invites a vague and conclusory answer. Papers are filed but issues are not joined.

■ The plaintiffs sought cover under the protective umbrella of "notice pleading", as if to say: "We have pleaded the essential elements of the cause of action, and there's nothing to be done about it." Unfortunately, the plaintiffs did not allege the essential elements of a claim for strict product liability or negligence under Illinois law. The only allegation in the amended complaint regarding the defective condition of the wax (which also constituted the negligence) was that it "was so composed that it had an inherent capacity to produce or cause bodily injury when used during customary handling by the ultimate user." Amended Complaint, para. 10. Even assuming this allegation would have been sufficient if it had been pleaded in the original complaint (though we believe it would not have been), it came to us in the wake of the plaintiffs' original complaint, which contained the following gem: the wax was defective because the manufacturer "omitted to include [in it] all necessary and essential ingredients." This allegation is absurd. To say that the wax lacked every one of its essential ingredients is to say that whatever it might have been, it was not wax.

This is not to say that it is beyond the realm of possibility that Daley manufactured a substance which was not floor wax, and yet sold it as floor wax. (Under *this* complaint it might be motor oil, or some other lubricant, assuming none of the "essential" ingredients of floor wax are used in them.) But it is to say that the sheer incredibility of this allegation, upon which the plaintiffs' claims rested, justified the demand for more detailed pleading, which the plaintiffs stubbornly refused to provide. Notice pleading does not require the suspension of common sense. This allegation was preposterous, and in our view it presents either an attempt to use the liberal Federal pleading requirements to effect a transfer of wealth via the nuisance suit, or a situation in which the plaintiffs and their lawyers had too little faith in the case to warrant the cost of some pre-suit investigation to determine whether the suit was justified. In either case it could not survive a motion to dismiss.

Many complaints avoid the fate suffered here because they do not contain allegations that are so transparently inadequate. The plaintiffs' mistake was that they were too pointed. Better (tactically but perhaps

not ethically) to couch one's claim in vague, conclusory terms; avoid being specific for it might provide your opponent (or the court) with the basis by which to make short work of the suit; fleshing out vague allegations requires discovery; and discovery requires money, often more money than the bottom line of the entire lawsuit will justify. Thus, a lawyer knows that settlement (cash) often lies at the end of the nebulous complaint. Notice pleading makes this possible, and thus carries with it the inevitable consequence that defendants will be forced to litigate and settle cases that have little or no merit.

None of this necessarily means the Federal Rules or their philosophical foundation are somehow wrong or should be reconsidered. No system of rules can be drawn so precisely that it will reflect perfectly the interests to be protected on both sides in every case. In a world of imperfect knowledge, all rules are over- or underinclusive to some extent. Notice pleading is overinclusive in the sense that it permits at least some dubious claims to survive the initial gauntlet of motions under Rule 12. The alternative, common law or code pleading, was underinclusive in that it enabled defendants to avoid liability by extinguishing some meritorious claims. *See generally* C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 1202 (1969 & 1988 Supp.). Rulemakers have, at least for the present, opted for the former, in the belief that on balance it is better (for society) that all individuals injured in a legally cognizable manner be compensated, even if it means compensating others who have suffered no injury (or at least no legally cognizable injury) and penalizing those without fault. There is a basis to doubt the wisdom of this approach, *see* Coase, *The Problem of Social Cost*, 3 J.L. & Econ. 1 (1960), but it need not detain us here. It is enough to recognize that the doctrine of notice pleading provides plaintiffs with an incentive to seek compensation for injuries for which defendants are not legally responsible. This recognition, in turn, justifies enhanced judicial scrutiny of certain pleadings, see, e.g., *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir.1985); *Patton v. Przybylski*, 822 F.2d 697 (7th Cir.1987), including those which carry telltale signs (evidenced, for example, by patently ridiculous allegations) that an abuse is in progress.

■ This is such a case. To allow these plaintiffs (and their lawyers) to escape the consequences of their risible allegations with a breezy invocation of "notice pleading" would mock the system we are charged to protect. We will not force defendants to endure the costly ordeal of litigation when a plaintiff has made allegations that obviously are without sense. Notice pleading was intended to simplify litigation and alleviate the draconian results spawned by common law pleading; it was not meant to insulate baseless lawsuits from dismissal during the pleading stages. The defect in this case smacks of far more than a typographical mistake or other innocent drafting error; it leaves the unmistakable impression that this complaint was filed without reasonable inquiry into its factual basis, and perhaps for a questionable purpose (to coerce settlement) as well. As Rule 11 illustrates, there is no room in the Federal courts for either of these practices.

The plaintiffs' motion for reconsideration is denied. In addition, the plaintiffs' claims against Pikes Brothers are dismissed for the reasons stated in our May 20, 1988 order (see p. 5) dismissing the plaintiffs' original complaint. The clerk is directed to enter an order pursuant to Fed.R.Civ.P. 58 dismissing the entire case.

## APPENDIX A

### MEMORANDUM OPINION AND ORDER

Althea and Oliver Nazarenus filed this diversity action against the defendants seeking $1,000,000 in damages for injuries arising out of Althea's slip and fall. Their complaint contains three counts: Althea's negligence and product liability claims (Counts I and II) and Oliver's cause of action for loss of consortium (Count III). Before the court is the motion of J.F. Daley International, Inc. ("Daley") to strike and

dismiss the complaint.[1]  For the reasons set forth below, Daley's motion is granted.

Daley manufactures and sells floor products such as wax.  Pikes Brothers, Inc. ("Pikes") distributes and sells cleaning supplies for manufacturers like Daley.  In this case the plaintiffs allege that Daley manufactured floor wax, sold it to Pikes, who in turn sold it to The Home Economist in Skokie, Illinois.  The Home Economist (interestingly, not named as a defendant) applied the wax to its floor, and Althea, a customer, slipped and fell injuring herself.

Count I, Althea's negligence claim, alleges that Daley and Pikes "owed a duty of exercising ordinary care [to ensure] that the floor in said store was in a (sic) reasonably safe condition for passage by customers * * *."  Para. 9.  Althea contends that the defendants acted negligently in three ways: (1) by failing to provide "a good, safe and proper wax"; (2) by manufacturing, selling and distributing the wax; and (3) by failing to provide adequate instructions regarding the application of the wax.  Para. 11.  Althea's product liability action, contained in Count II, recites that Daley "omitted to include all necessary and essential ingredients and components into (sic) the wax * * * so that said wax was in a defective and unreasonably dangerous condition."  Count II, para. 10.  Finally, Count III, which is Oliver's claim for loss of consortium, states that as a result of Althea's injuries he has "suffered the loss of the services of his wife * * * and has been deprived of her affection, society, companionship, and consortium."  Count III, para. 14.  Daley contends that all of these claims are legally insufficient.  We address each in turn.

At several points in its motion and reply, Daley suggests that the plaintiffs have not adequately pleaded the existence of a duty of care, which of course is an essential element in a claim for negligence.  *See* Daley's Motion to Strike and Dismiss, at 2 para. 6; Daley's Reply, at 7.  We agree.  The plaintiffs allege that Daley owed them a duty of care to ensure that the floor of The Home Economist "was in a reasonably safe condition for passage by customers * * *."  Count I, para. 11.  While The Home Economist may be under such a duty, Daley is not.  It does not require much imagination to see that imposing such a duty on a manufacturer such as Daley would exact costs far outweighing any benefits to be derived: were we to recognize the duty urged by the plaintiffs, it would require Daley to follow its products through the stream of commerce to ensure that the ultimate purchasers of the products use them properly.[2]  Not only would such a duty be financially prohibitive, it would present potentially insuperable logistical problems.[3]  Accordingly, we believe that Count I fails to state a claim upon which relief can be granted, and must be dismissed.

Nevertheless, because we think this flaw can be remedied through repleading, we pause to consider another shortcoming in Althea's negligence claim, namely, the lack of proper allegation of negligent conduct.  The allegations that Daley failed to provide "a good, safe and proper wax", and to provide adequate instructions are mere conclusions which require some factual basis, presently absent, to withstand a motion to dismiss.  In the same vein, the fact that Daley manufactures, sells, and distributes floor wax does not constitute negligent

---

1.  We note that the plaintiffs have failed to respond to Daley's motion.  Their response was originally due on January 6, 1988, but we granted two extensions permitting them until March 18.  Apparently, however, they have decided not to take advantage of these opportunities, and we therefore deem that they have waived their response.

2.  A legal duty is logically connected to one's status in the context of the relevant transaction.  A manufacturer, by definition, is one who produces something; and his duty is related to his

function, not to some unrelated task.  Here, the duty alleged by the plaintiffs does not logically correspond to Daley's status as manufacturer; rather it conforms to a user's status, such as The Home Economist.

3.  For instance, it is unclear how Daley could track its products once it sold them to an intermediate distributor (such as Pikes) who then resells them to the end users—possibly spread over the entire globe.

conduct; if it did, it would pose a rather knotty problem for merchants. Should the plaintiffs decide to file an amended complaint, they would do well to recast their allegations in light of these remarks.

Counts II and III require only brief comment. The linchpin of Count II, Althea's claim for product liability, is that Daley neglected to include "all necessary and essential ingredients" in the floor wax, thus causing it to be unreasonably dangerous. As with the allegations of negligent conduct in Count I, this wholly unsupported conclusion simply is not enough to justify forcing Daley to endure the costly ordeal of defending a lawsuit. Which ingredients of the floor wax are "essential"? We believe that Daley is entitled to know more of the facts than the plaintiffs have seen fit to provide. Finally, Oliver's claim for loss of consortium, set out in Count III, derives solely from Althea's claims; therefore, in light of the fact that we have dismissed her claims, Oliver's is extinguished as a matter of law.

Before concluding, however, we think it appropriate to remind the plaintiffs and their attorneys of their obligation under Fed.R.Civ.P. 11 to make a reasonable inquiry into the factual basis of their claims *before* they file an amended complaint.[4] *See Frantz v. U.S. Powerlifting Federation,* 836 F.2d 1063, 1064 (7th Cir.1987).

The claims against Pikes also must be dismissed. Pikes' liability apparently rests on its place in the chain of distribution: therefore, if Daley is not liable, then neither is Pikes. Accordingly, since we have dismissed the claims against Daley, it necessarily follows that the claims against Pikes must fall.

The plaintiffs have 28 days from the date of this order in which to file an amended complaint. In the event they do not do so the dismissal shall be with prejudice.

## APPENDIX B

### MEMORANDUM ORDER

Althea Nazarenus fell and injured herself while shopping in The Home Econo-mist store in Skokie, Illinois. She attributes her tumble to the floor wax. And voila, she brought this suit against the manufacturer and distributor of the wax. The original complaint consisted of three counts: Althea's negligence and product liability claims; and her husband's claim for loss of consortium. J.F. Daley International moved to dismiss the complaint. We granted the motion and held that the negligence count failed to allege sufficiently that the defendants owed Althea a duty of care; we also dismissed her product liability claim because it rested on the vacuous allegation that the floor wax was defective and unreasonably dangerous in that it lacked "all essential ingredients and components" (what was it?); and since we found that Althea had no claim we held that her husband's derivative claim was extinguished as a matter of law. We allowed the plaintiffs 28 days to file an amended complaint, but we reminded them and their attorneys of their obligation under Rule 11 to make a reasonable inquiry into the factual basis of their claims before filing an amended complaint. The plaintiffs filed an amended complaint; and Daley filed its second motion to dismiss, as well as a motion for sanctions pursuant to Rule 11.

The plaintiffs' amended complaint contains five counts, of which three concern Daley: Counts I and II contain Althea's product liability and negligence claims, and Count V sets out Oliver's claim for loss of consortium. As we noted above, we dismissed Althea's original claim for product liability because it rested on the wholly unsupported assertion that Daley's floor wax lacked "all necessary and essential ingredients." We determined that Daley was entitled to know the factual basis underlying this bold allegation. Althea's response (para. 10):

> The wax was in an unreasonably dangerous and defective condition and was so composed that it had an inherent capacity to produce or cause a bodily injury when used during customary handling [?] by the ultimate user.

---

**4.** In addition to the allegations already discussed in the text, the plaintiffs should think twice before seeking punitive damages in an amended complaint: there is absolutely no hint in the complaint that either defendant's conduct was wanton or willful.

This does not pass the test. Merely alleging that wax is slick or slippery does not mean it is defective for purposes of strict product liability. But even if it did, it seems to us that if one can allege that floor wax possesses an "inherent capacity to produce or cause a bodily injury", then one ought to be able to say why. But Althea doesn't. This allegation, like its predecessor in the original complaint, is 100% conclusion and 0% fact. In light of our prior ruling requiring some factual basis, we can only conclude there is none. Count I is dismissed with prejudice.

Nor can Count II survive. Although we sacked Althea's previous negligence claim on duty grounds, we observed that her allegations of negligent conduct also should be reworked (*see* Mem. Op. at 4). And true enough, she has tinkered with them; but they required an overhaul. Her present allegations of negligence against Daley are as follows:

(1) Daley manufactured, sold and distributed wax that was dangerous and defective;

(2) Daley failed to warn those using the wax that it was "slick and slippery"; and

(3) Daley failed properly to test and inspect the wax to determine whether it was reasonably safe for the purpose for which it was manufactured.

The first and third allegations, as is clear from our previous discussion, fail because Althea has offered no factual support for her claim that the wax was dangerous. The second is insufficient as a matter of Illinois law.[1]

From this it follows that Oliver's claim for loss of consortium, which derives from Althea's claims, also must be dismissed.

We now turn to Daley's motion for sanctions under Rule 11. Sanctions are certainly in order regarding Althea's product liability claim. Despite our admonition that the claim be pleaded with greater (at least some) factual specificity, Althea and her counsel obdurately refiled a vacuous claim. From our coign of vantage it is clear that there is no factual basis for her product liability claim, and it should not have been refiled. Althea responds that the "case is now in discovery stages", and that discovery has turned up "a great deal of information concerning the occurence [sic] involved in this litigation." Plaintiffs' Resp. at 3. Even if true it is of no moment, however, because "the need for discovery does not excuse the filing of a vacuous complaint. No matter how such inquiries come out, * * * courts must ask the right question: whether the side filing the pleading knew enough at the time * * *." *Frantz v. U.S. Powerlifting Federation,* 836 F.2d 1063, 1068 (7th Cir.1987); *accord Harden v. Peck,* 686 F.Supp. 1254, 1263 (N.D.Ill.1988). Althea did not.

We must also sanction Althea and her counsel for refiling her negligence claim because it suffers from the same flaw as the product liability claim: the lack of a proper allegation of a defect in the wax. The fact that two claims suffer from the same deficiency does not mean there is only one violation. Rule 11's requirement of a reasonable inquiry extends to every claim contained in a pleading. Here, Althea and counsel failed to make a reasonable inquiry into the factual basis for either Count I or II; and therefore both claims are sanctionable. But the sanction we impose is not amercement; it is this order which shall serve as a reprimand. The plaintiffs' complaint against Daley is dismissed with prejudice. We leave it up to Pikes Brothers, Inc. (the distributor of the floor wax and remaining defendant) to proceed as it sees fit.

---

**1.** Under Illinois law, merely treating a floor with wax is not negligence per se. *Lucker v. Arlington Park Race Track Corp.,* 142 Ill.App.3d 872, 97 Ill.Dec. 100, 102, 492 N.E.2d 536, 538 (1st Dist.1986). Some positive act of negligence must be established. *Id.* With respect to Daley, then, Althea must plead that Daley was somehow negligent in the manufacture of the wax. The reason that Daley is not liable for a failure to warn, therefore, is that Althea has not pleaded adequately the existence of any facts which would require a warning.