#31054-r-SPM
**2026 S.D. 10**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

WELLS FARGO BANK, N.A.,  Plaintiff and Appellant,

v.

MARY MYERS,  Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ERIC J. STRAWN
Judge

* * * *

KARL VON OLDENBURG of
BQ & Associates P.C., L.L.O.
Omaha, Nebraska  Attorneys for plaintiff and
appellant.

DAVE L. CLAGGETT of
Claggett & Dill, Prof. LLC
Spearfish, South Dakota  Attorneys for defendant and
appellee.

* * * *

CONSIDERED ON BRIEFS
JANUARY 12, 2026
OPINION FILED **02/18/26**

#31054

MYREN, Justice

[¶1.]     Wells Fargo filed a complaint against Mary Myers (Mary 1) seeking collection of credit card debt.  A Lawrence County sheriff's deputy served a different Mary Myers (Mary 2) with the summons and complaint.  An attorney representing Mary 2 sent a letter to Wells Fargo's attorney demanding that the case be dismissed with prejudice and that Wells Fargo reimburse her legal fees.  Wells Fargo's attorney did not respond to the letter, and Mary 2's attorney filed a motion for sanctions under SDCL 15-6-11 (Rule 11).  The circuit court concluded that Wells Fargo's attorney had violated Rule 11 and awarded attorney fees.  Wells Fargo appeals the award of attorney fees under Rule 11.  We reverse.

## Factual and Procedural Background

[¶2.]     On December 3, 2024, Wells Fargo filed a summons and complaint against Mary 1.  The complaint described the "Consumer Credit Card" agreement that Wells Fargo had made with Mary 1 and sought to recover an unpaid balance.  The agreement and several statements detailing the amount owed under it were attached to the complaint.  Exhibit C to the complaint was a status report pursuant to the Servicemembers Civil Relief Act that indicated a birth date and a social security number associated with Mary Myers.

[¶3.]     Wells Fargo also prepared a case filing statement that included personal information about Mary 1 that matched the information in Exhibit C of the complaint, including her address, birth date, and the last four digits of her social security number.  Wells Fargo also submitted "Directions for Service," which directed the Lawrence County Sheriff to serve "Mary Myers" at 330 W. Grant

-1-

Street.  On December 18, 2024, a deputy sheriff served "Mary Ann Myers" (Mary 2) at a different address than the one described in Wells Fargo's directions for service. It is undisputed that the deputy sheriff served a different "Mary Myers" than the one described in Wells Fargo's complaint, docketing statement, and directions for service.

[¶4.]     Mary 2 notified her attorney that she had been served with Wells Fargo's summons and complaint.  Her attorney sent a letter to Wells Fargo's attorney explaining that Mary 2 "ha[d] nothing to do with the case," and noting that Mary 2's social security number and birthdate were different than those described in the attachments to the complaint.  Her attorney demanded that Wells Fargo "must dismiss this litigation against our client with prejudice and at once provide proof of compliance to this firm within 21 days or such shorter time as the [c]ourt may prescribe."  Mary 2's attorney also suggested that "[a]ny continued litigation against our client now that such error has been directed to your attention, we consider to be in violation of your duties under Rule 11[.]"  Finally, Mary 2's attorney demanded $371.70—the expense of preparing the letter.

[¶5.]     Wells Fargo's attorney explained in a subsequent affidavit that "[b]ased on Counsel's December 18, 2024 letter, Plaintiff believed the letter was saying Plaintiff had the wrong Mary Myers living at 330 W Grant Street."  He also explained that he "reached out to Wells Fargo for more information regarding defendant Mary Myers and her connection to the Grant Street address.  Wells Fargo confirmed the address, sent to my firm every single credit card statement associated with the account and a copy of her license and social security card."  After this

review, Wells Fargo's attorney concluded that he had "filed [the] complaint against the correct Mary Myers at her correct address." However, Wells Fargo's attorney did not attempt to contact Mary 2's attorney to discuss the situation.

[¶6.] In January 2025, after receiving no response from Wells Fargo's attorney, Mary 2's attorney filed a motion to dismiss and a motion for sanctions under Rule 11. Regarding the motion to dismiss, Mary 2 argued "Mary Ann literally has nothing to do with this case and, despite promptly bringing this matter to the attention of Plaintiff's counsel[,] Plaintiff failed to present any contract or documentation proving that Mary Ann Myers was contractually involved with the Plaintiff"; "Plaintiff has no legally enforceable claim against Mary Ann and Mary Ann Myers is entitled to dismissal with prejudice."

[¶7.] In response, Wells Fargo filed a "motion to strike service" requesting the circuit court to enter "an order striking the above[-]referenced service and for the complaint to remain on the active docket for proper service." Wells Fargo also resisted Mary 2's motion for sanctions. Wells Fargo's attorney filed an affidavit describing the investigation that he undertook before filing the complaint and after being notified that the wrong Mary Myers had been served.

[¶8.] At the hearing on the parties' respective motions, Mary 2 asked that the circuit court grant her motion to dismiss and order Rule 11 sanctions against Wells Fargo's attorney. Wells Fargo's attorney acknowledged that Mary 2 was not the Mary Myers referenced in the complaint, and that its claims were not against her. He also described his investigative efforts and thought processes before filing the complaint and after receiving opposing counsel's letter.

[¶9.]    In the circuit court's written findings of fact and conclusions of law, it explained: "The parties agree and the [c]ourt finds Mary Ann Myers is not the Mary Myers referred to in this action"; "Based upon information before the Court, the Deputy for Lawrence County Sheriff's office failed to apply correct identifiers and served Mary Ann Myers instead of Mary Myers who also lives in the same area but different address."

[¶10.]    The circuit court determined that Wells Fargo's attorney violated Rule 11 when he failed to reach out to Mary 2's attorney after receiving the letter notifying him of the service issue and when he failed to rectify the service issue. Finally, the circuit court stated that Wells Fargo "failed to show the claims against Mary Ann Meyers [sic], had evidentiary support after being properly informed that she was not [the] Mary Meyers [sic]" listed in the complaint. The circuit court dismissed Mary 2 from the lawsuit and, as a sanction for violating Rule 11, ordered Wells Fargo to pay $3,662.93 in attorney fees to Mary 2.

[¶11.]    Wells Fargo appeals the Rule 11 sanction.

## Decision

***Whether the circuit court abused its discretion when it determined Wells Fargo's attorney violated Rule 11.***

[¶12.]    Wells Fargo argues that Rule 11 is only applicable to a "pleading, motion, or other paper" or conduct relating to those documents, and that "Rule 11 does not encompass all conduct within judicial proceedings"; it "is not a panacea intended to remedy all manner of attorney misconduct occurring before or during the trial of civil cases." Wells Fargo submits that, although the sheriff served the complaint on the wrong person, the allegations in the complaint were entirely

accurate. Wells Fargo's attorney asserts that he established that he had satisfied his due diligence obligation before filing the complaint. Wells Fargo's attorney contends that his actions following receipt of the letter from Mary 2's attorney are not subject to Rule 11 sanctions because they are unrelated to the investigation and signing of the complaint.

[¶13.]     A circuit court's award of sanctions under SDCL 15-6-11 is reviewed for an abuse of discretion. *Smizer v. Drey*, 2016 S.D. 3, ¶ 14, 873 N.W.2d 697, 702. "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (citation omitted). "An abuse of discretion also occurs when the court bases 'its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (citation omitted).

[¶14.]     Pursuant to SDCL 15-6-11(a), "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record[.]" The purpose of the signature requirement is clarified in SDCL 15-6-11(b):

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

*Id.*; *see also* 5A Fed. Prac. & Proc. Civ. § 1335 (4th ed. 2025) ("[T]he attorney's [ ] signature on a paper presented to the [ ] court is a certification that the signer has concluded, after an inquiry that is reasonable under the circumstances into both the facts and the law, that to the best of his or her knowledge, information, and belief there is support for the contentions in the document, both in terms of what the law is or should be and in terms of the evidentiary support for the allegations, and that he or she is acting without an improper motivation.").

[¶15.] If the court determines that SDCL 15-6-11(b) has been violated, it may impose an appropriate sanction, but the sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." SDCL 15-6-11(c). "[E]vidence of bad faith is not required [ ] because the aim is 'to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions.'" *Smizer*, 2016 S.D. 3, ¶ 18, 873 N.W.2d at 703 (quoting *Anderson v. Prod. Credit Ass'n*, 482 N.W.2d 642, 645 (S.D. 1992)).

[¶16.] In his affidavit and during the hearing, Wells Fargo's attorney described the nature of his investigation before he filed the complaint.∗ Mary 2 did

---

∗ Wells Fargo's attorney explained:

> 6. Prior to approving the filing of the Complaint, Attorney Karl von Oldenburg, reviewed all Wells Fargo account information. Name of consumer, consumer address, Birthdate, SSN, account open date, account close date, last payment date and charge off
>
> (continued . . .)

not contest the accuracy of his efforts. Based on the attachments to the complaint (specifically the documents describing the outstanding debt owed to Wells Fargo), it is evident that the claims against Mary 1 had evidentiary support, that Wells Fargo's attorney discharged his duty of due diligence before filing the complaint, and that the claims were not presented for an improper purpose. The factual allegations in the complaint were accurate at the time of filing and remained so throughout the proceedings. The fact that the sheriff's deputy served the wrong Mary Myers did not change the accuracy of the allegations in the complaint.

[¶17.]      Still, the circuit court found the attorney violated Rule 11 because of his actions after receiving the letter from Mary 2's attorney. However, Rule 11 "applies only to assertions contained in papers filed with or submitted to the court." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. In other words, Rule 11 does not empower a circuit court to impose sanctions for all types of attorney misconduct. *See Trulis v. Barton*, 107 F.3d 685, 695 (9th Cir. 1995) ("Rule 11 sanctions are not an appropriate remedy for this alleged misconduct since they are only available with regard to papers filed with the court, not attorney misconduct."). Rather, the type of conduct that may be sanctioned under Rule 11 is the "signing, filing, submitting, or later advocating" of a "pleading, written motion, or other paper." SDCL 15-6-11(b). Although attorney misconduct that occurs after the signing or filing of a complaint may be sanctionable through other means,

_____

(. . . continued)
        date. Karl von Oldenburg also reviewed over a year of credit card statements including the charge off statement. The file was reviewed for any disputes which would require verification, any missed payments and any possible settlement on the file.

conduct not related to the "pleading, written motion, or other paper" presented to the court is not sanctionable under Rule 11.

[¶18.] The circuit court deemed two post-filing actions by Wells Fargo's attorney to have violated Rule 11. The first was that "Plaintiff failed to show the claims against Mary Ann Meyers [sic], had evidentiary support after being properly informed that she was not Mary Meyers [sic]" as described in the complaint. Rule 11 sanctions could have been appropriate if Wells Fargo had filed an unsupportable claim against Mary 2. But its complaint did not advance any claim against Mary 2. Its claim remained against Mary 1, despite the deputy sheriff mistakenly serving Mary 2. Additionally, nothing in this record suggests that Wells Fargo was aware that multiple Mary Myers were residing in Spearfish and sued imprecisely, hoping that the correct Mary Myers would be included in its suit. *See Black Hills Inst. of Geological Rsch. v. S. Dakota Sch. of Mines & Tech.*, 12 F.3d 737, 745 (8th Cir. 1993) ("Improperly naming a party in a suit justifies Rule 11 sanctions when 'joining the party [is] baseless or lacking plausibility.'" (alteration in original) (citation omitted)); *Harden v. Peck*, 686 F. Supp. 1254, 1263 (N.D. Ill. 1988) (explaining that when "a plaintiff grabs as many defendants as possible, and then throws them out one by one until he finds" the correct one violates Rule 11). Here, the undisputed record establishes that Wells Fargo's attorney exercised due diligence to establish that Wells Fargo had a valid basis to pursue a claim against the Mary Myers (Mary 1) identified in its complaint and attachments. This complaint did not assert any cause of action against Mary 2, and the circuit court abused its discretion in concluding otherwise.

[¶19.] The second action the circuit court identified as a violation of Rule 11 was Wells Fargo's attorney's failure to contact Mary 2's attorney or otherwise immediately address the mistaken service on Mary 2. Clearly, additional communication between counsel may have resolved this matter more expeditiously. However, the problem was caused by the deputy sheriff's mistaken service on Mary 2, not by any deficiency in Wells Fargo's pleading. Even if the court concluded that Wells Fargo should have been quicker to respond to opposing counsel's letter or to rectify the mistaken service by the deputy sheriff, such a finding would not constitute conduct that violates an attorney's obligations under Rule 11.

[¶20.] The circuit court's award of attorney fees is reversed because the circuit court abused its discretion by incorrectly applying Rule 11 to sanction conduct that was not sanctionable under that Rule.

[¶21.] JENSEN, Chief Justice, and DEVANEY and GUSINSKY, Justices, concur.

[¶22.] SALTER, Justice, concurs specially.

SALTER, Justice (concurring specially).

[¶23.] I agree with the Court's sound interpretation of Rule 11 and join its conclusion that the rule does not support the attorney fees sanction here. I write specially to address the more stubborn and lingering question of why Mary Myers does not receive a compensatory attorney fees award.

[¶24.] Through no fault of her own, Myers was conscripted into Wells Fargo's collection action and had to hire an attorney to help extricate herself. Intuitively, reimbursing her for this cost seems eminently just. In Wells Fargo's appellate brief,

even von Oldenburg appears to understand that his conduct could conceivably require an attorney fees sanction and, frankly, that he could have done better:

> As a mea culpa Appellant's counsel appears not to have fully comprehended the meaning of [Myers' counsel's] Rule 11 letter, service rather than the content of the pleading. Further Appellant's counsel did not monitor for the return of service. The file was diarized for later review for service and further action. These actions may or may not be sanctionable for attorney fees but not under Rule 11.

[¶25.] Separate and apart from Rule 11, we have held that "courts have inherent authority to act *sua sponte* and order the payment of opposing party's reasonable attorney fees if the party's actions rise to the level of litigation misconduct." *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 17, 746 N.W.2d 739, 744 (citing Dan B. Dobbs, *Law of Remedies*: *Damages—Equity—Restitution* § 3.10(3) (West 2d ed. 1993)); *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (applying a similar rule for federal courts). Although we did not explicitly define "litigation misconduct" in *Jacobson*, we should view it within the standard of bad faith. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 751 (8th Cir. 2004) ("A bad faith finding is specifically required in order to assess attorneys' fees." (citation omitted)); *cf. Van Zee v. Reding*, 436 N.W.2d 844, 845 (S.D. 1989) (invoking inherent authority to sanction a party based on "willfulness, fault or bad faith" standard to "sanction of dismissal" (citation omitted)).

[¶26.] In the context of the inherent authority of the federal courts, the United States Supreme Court has explained:

> Federal courts possess certain "inherent powers," not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes "the ability to fashion an appropriate sanction for

conduct which abuses the judicial process." And one permissible sanction is an assessment of attorney's fees—an order, like the one issued here, instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side.

*Goodyear*, 581 U.S. at 107 (citation modified); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) (acknowledging that federal courts have inherent authority to award attorney fees when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons").

[¶27.]     Even under a bad faith test that "only requires 'rough justice' and not accountant-like precision," *Fuery v. City of Chicago*, 900 F.3d 450, 469 (7th Cir. 2018) (citation omitted), the circuit court's findings, oriented as they were to Rule 11, cannot support an incidental finding of bad faith that would allow us to exercise our inherent authority on appeal to affirm the attorney fees sanction order.