Ernie **FRANTZ, et al.,**
**Plaintiffs–Appellees,**

v.

**UNITED STATES POWERLIFTING**
**FEDERATION, et al.,**
**Defendants–Appellants.**

Nos. 87–1149, 87–1223.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1987.

Decided Dec. 31, 1987.

Stephen L. Sulzer, Washington, D.C., for
defendants-appellants.

James W. Kissel, Sidley & Austin, Chicago, Ill., for plaintiffs-appellees.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The complaint charged the International Powerlifting Federation (IPF), its American affiliate the United States Powerlifting Federation (USPF), and Conrad Cotter, the president of the USPF, with conspiring to monopolize the sport of weight lifting. The plaintiffs include two weight lifters who were disqualified from participating in events sponsored by the IPF because they participated in events sponsored by the American Powerlifting Federation (APF), a rival to the USPF. The APF is itself a plaintiff. Under the IPF's rules, participants in meets that are not sanctioned by the IPF or its national affiliates may not participate in the IPF's international championship meets.

The IPF did not file an appearance, and a default judgment was entered against it. The district court dismissed the complaint against the USPF and Cotter under Fed.R. Civ.P. 12(b)(6) for failure to state a claim on which relief may be granted, after plaintiffs' counsel conceded that the complaint was insufficient. The plaintiffs then filed an amended complaint against USPF, dropping Cotter as a defendant. The district court dismissed this complaint under Rule 12(b)(6), finding it dependent on a theory of conspiracy between the USPF and the IPF that could not be sustained. The court also held that Cotter is entitled to attorneys' fees as a sanction under Fed.R.Civ.P. 11 for the initial complaint against him, because the plaintiffs did not have a plausible argument about how the USPF could conspire with its officers. The court denied the USPF's request for sanctions, however, because it concluded that the plaintiffs' amended complaint had a colorable, though unsuccessful, theory.

Cotter's request for fees came to $44,-700: $4,300 to obtain dismissal of the initial complaint, and $40,400 to pursue the request for fees (and ask the district court to ensure that the amended complaint did not

apply to him). The size of the request surprised—shocked—the district judge. The court vacated its award under Rule 11, writing:

> [T]he court granted Cotter's request for sanctions [because] ... the law is clear that a corporate officer is not capable of conspiring with his corporation about antitrust violations. Sanctions were awarded because it was extremely clear to the court that there was no legal or factual basis for naming Cotter as a defendant. Cotter's attorneys, however, contend that they have spent at least 39.535 hours drafting that portion of the motion to dismiss, memorandum in support of the motion and summary of the motion which pertained to Cotter. They have requested $4,289.48 in fees as to this activity. (They also request an additional $40,401.40 in fees.) Apparently, the issues regarding Cotter's legal and factual involvement in the case were vastly more complicated than this court had determined. The issues must also have been more complicated than appeared from the briefs of the parties. Therefore, the court is sua sponte reconsidering the award of attorneys' fees under Rule 11, Fed.R.Civ.P., and is hereby denying the award of attorneys' fees in toto.

Cotter appeals from the vacation of the award in his favor, and the USPF appeals the denial of its request for sanctions.

I

The suit against Cotter was frivolous, given *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), decided a year before this suit began. Rule 11 requires counsel to do legal research before filing, and to be aware of legal rules established by the Supreme Court. E.g., *Sparks v. NLRB*, 835 F.2d 705 (7th Cir.1987); *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080–82 (7th Cir.1987). A party may not strike out blindly and rely on its opponent to do the research to make the case or expose its fallacies. See *In re TCI Ltd.*, 769 F.2d 441, 445–47 (7th Cir.1985).

If a party files a paper in violation of Rule 11, the district court "shall" impose a sanction, under the express terms of that Rule. See also *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1434 n. 3 (7th Cir.1987). The complaint was sanctionable on two bases: it was frivolous, and it was filed without a prior, reasonable inquiry into the law. The district court was required to impose a sanction—as initially it did.

The court vacated the sanction because the request for fees showed that counsel spent about 40 hours preparing and filing the motion to dismiss. This showed, according to the court, that the case was "vastly more complicated" than the court had believed. Perhaps this is a droll way to say that Cotter's total bill was out of line. We consider this possibility later. If the court meant the remark seriously, it is insufficient. Whether the complaint violated Rule 11 depends on what the plaintiffs and their lawyer did—whether they performed the legal and factual work necessary to avoid filing an unwarranted paper —not on what the defendants did with the complaint. That the defendants may have taken too long to find *Copperweld* does not absolve plaintiffs; the violation of Rule 11 exists at the moment the paper is filed. If Cotter's lawyers were inefficient, then Cotter must pay them (or counsel must swallow the costs, as counsel who waste time recognize when exercising billing judgment). The defendants' inefficiency does not show that the case was "vastly more complex" than the district court first thought. *Copperweld* holds that corporate officers cannot conspire with their corporations for purposes of the antitrust laws. The complaint was based on a conspiracy between officer and corporation; this was doomed after *Copperweld*, and sanctions were in order.

For what it is worth, we doubt that 40 hours is preposterous for preparing a response to this complaint. Cotter's lawyers had to find *Copperweld* and then consider the possibility that plaintiffs were trying to create an exception to that case. This might entail researching the treatment of *Copperweld* in later cases and interviewing Cotter, a resident of Florida, to discover whether there were facts (and therefore a theory) lurking behind the outline provided by the complaint. Antitrust suits are easy to file yet notoriously costly to defend, and achieving the dismissal of an antitrust case in under 40 hours is unusual.

What is even more unusual is that counsel took about 400 hours to pursue the compensation for 40 hours, a ratio of billing time to productive time that would be fatal when collecting from one's own clients. The request for sanctions was an adversarial proceeding, which eats up time that need not be spent when collecting from friendlier clients, but a ratio of ten to one still is extreme. The district court was entitled to be skeptical of this bill.

We held in *Brown v. Stackler*, 612 F.2d 1057 (7th Cir.1980), that a district court may deny a request for fees under 42 U.S. C. § 1988 as a sanction for filing an outrageously large request—in *Brown v. Stackler*, a bill for 800 hours to prosecute, mostly by filing requests for extensions of time, a "plain and simple" case that "almost automatically" would be disposed of in accordance with the result of another pending case. 612 F.2d at 1059. See also *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605 (7th Cir.1982) (same result in a request for fees under the Age Discrimination in Employment Act). The district court here may have deemed the whole $44,700 request bizarre, justifying a denial of fees on the approach of *Brown v. Stackler*.

■■■ We have yet to decide whether the approach of *Brown v. Stackler* applies to sanctions under Rule 11. The court emphasized in that case that counsel wanted fees under § 1988, which says that the district court "may" award a fee to the prevailing party; our opinion emphasized the discretionary nature of an award under § 1988. The district judge has no similar discretion under Rule 11, which says that the judge "shall" impose sanctions on offending parties and lawyers. Moreover, the court assumed in *Brown v. Stackler* that the court had only two options: (1) to

award the "reasonable" fees to which the prevailing party was entitled, which would create no disincentive to the filing of inflated requests, and (2) to deny the request. Faced with this choice, the court picked the latter. Rule 11 does not present district judges with such an all-or-nothing choice. (It is not clear that § 1988 does either, but the panel in *Brown v. Stackler* assumed that it did.) The court may impose a penalty as light as a censure and as heavy as is justified—a fine that may exceed the amount of fees incurred by the opposing party. See *Cheek v. Doe*, 828 F.2d 395 (7th Cir.1987). Rule 11 enables the court to protect itself, and the litigants in other cases, from the burdens of frivolous or vexatious filings. Achieving the optimal deterrence may call for the offending party to lose more or less than the injured party's loss. Frivolous litigation injures the judicial system and other litigants, whose day in court is postponed as judges must devote time to needless motions and heedless litigants. Courts may consider these public injuries when fixing penalties. See generally *Brown v. Federation of State Medical Boards*, 830 F.2d at 1437–40; *Eastway Construction Corp. v. City of New York*, 821 F.2d 121 (2d Cir.1987). It also is not written that what the offender surrenders the other side must receive. The court may impose as a fine any sum that is appropriate for deterrent purposes, but which the other side does not deserve. And a public censure, an important method of professional discipline, may be called for even when a monetary sanction is not. See *In re Kelly*, 808 F.2d 549 (7th Cir.1987); *In re Curl*, 803 F.2d 1004 (9th Cir.1986).

■ The complaint in this case was frivolous, which calls at a minimum for censure of Victor D. Quilici, the plaintiffs' lawyer. Whether it calls for amercement—and, if so, whether Cotter or the Treasury is the appropriate beneficiary—is something the district court should consider as an initial matter. *Brown v. Federation of State Medical Boards* sets the procedural guidelines for this inquiry. In a proceeding under Rule 11, the filing of a bloated request for fees is itself subject to sanctions, and a district court should ask (independently) what is the appropriate sanction for the one act of misconduct and what is the appropriate sanction for the other. The two do not necessarily come to the same amount.

Although the district court possesses substantial discretion in selecting the sanction, the court must exercise that discretion conscientiously and with recognition of the ends in view: discouraging both frivolous filings and improper requests for fees. Discretion does not imply that anything goes. "[D]iscretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975), quoting from *United States v. Burr*, 25 F.Cas. 30, 35 (No. 14,692d) (C.C.Va.1807) (Marshall, C.J.).

There is no single "right" sanction, any more than there is one "right" penalty for bank robbery. Much must be left to the good judgment of the courts of first instance. See *Wisconsin Real Estate Investment Trust v. Weinstein*, 781 F.2d 589, 597–99 (7th Cir.1986). But the method of getting to a sanction should be characterized by intellectual discipline, which here means (at least) consideration of the possibility that the sanctions for the two filings are different. Because this case involved a request for a tidy sum, the court should explain why it chose to equate the two sanctions (if that remains its disposition after reconsideration). As we stressed in *Brown v. Federation of State Medical Boards*, 830 F.2d at 1438–40, an explanation need not be complex, and a judge need not pretend that there is a single right answer that can be reached by deductive logic or defended with precision. The absence of ineluctable answers does not imply the privilege to indulge an unexamined gestalt. This case must be remanded so that the district court may put its reasoning on record—a process that, by inducing critical scrutiny of one's initial reactions, often improves the quality of decisions.

## II

The district court rejected outright the USPF's request for attorneys' fees under Rule 11. The USPF's request dealt only with the initial complaint, which had contained several claims: that the defendants fixed the price of services for providing "sanctions" for national and international meets; that they fixed the price of rights to broadcast such meets on television; that they fixed the entry fees contestants paid for such meets and the admission prices for fans; that they restricted the output of weight lifting; and that they threatened to suspend (and in two cases suspended) weight lifters who participated in an event sponsored by the APF.

Some of these claims are half-baked. For example, although the complaint said that the defendants raised the price of entry fees, the plaintiffs' later affidavits seemed to characterize the conduct as either monopsony or predatory pricing. Another example: the plaintiffs protested the price the defendants charged for TV broadcasts of their events, although the plaintiffs neither purchased nor sold TV rights. See *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). They conceded the insufficiency of this theory (after the defendants had filed briefs explaining its defects) and abandoned it in the amended complaint.

■ The district court had only this to say about the USPF's request for sanctions under Rule 11:

> The allegations of seven types of anticompetitive conduct by the USPF and the IPF are largely conclusory. However, there are at least a few facts in the complaint which describe the anti-competitive conduct. Although it is difficult to determine the exact nature of the alleged anti-competitive conduct in the absence of greater specificity, the allegations on the whole appear to be based on plausible legal theories.

The court appears to be making two points. One is that if a complaint contains any formally correct statement of a legal theory, then the pleader's obligation under Rule 11 has been satisfied. This is incorrect. A claim may be sufficient in form but sanctionable because, for example, counsel failed to conduct a reasonable investigation before filing. And the inclusion of one sufficient (and adequately investigated) claim does not permit counsel to file a stream of unsubstantiated claims as riders.

■ Each claim takes up the time of the legal system and the opposing side. A single claim in an antitrust case may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories. Rule 18(a) permits the liberal joinder of claims, but each joined claim, potentially the basis of separate litigation, must have a foundation—the same foundation it would have needed if the claims had been pursued separately. Just as evidence that Perkins is a thief does not justify an accusation that he is a murderer, so a colorable legal theory about boycotts of weight lifters does not excuse a baseless allegation about price fixing in the television business. Rule 11 applies to all statements in papers it covers. Each claim must have sufficient support; each must be investigated and researched before filing. See *Szabo*, 823 F.2d at 1080–82, 1082–84 (separately analyzing each claim in the complaint); *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1200 (7th Cir.1987); *District No. 8 of Machinists v. Clearing*, 807 F.2d 618, 623 (7th Cir.1986). Contra, *Burull v. First National Bank of Minneapolis*, 831 F.2d 788 (8th Cir.1987).

The court's other point is that the complaint contains sufficient facts from which the judge may discern the legal claims. The USPF takes issue with this, arguing that the complaint was shy the necessary facts. The USPF's reply brief asserts: "This court has made clear that even if Mr. Quilici possessed sufficient information in his files to support plaintiffs' claims, his failure to include it in the complaint violated Rule 11." The USPF does not cite the cases where we "made clear" this proposition. There aren't any such cases. The USPF has confused Rule 8 with Rule 11. Rule 8 determines how much information has to be in the complaint—not much, as

both the language of Rule 8 and the forms attached to the Rules show. The complaint should contain a "short and plain statement of the claim showing that the pleader is entitled to relief", Rule 8(a)(2). It is not only unnecessary but also undesirable to plead facts beyond limning the nature of the claim (with exceptions, see Rule 9, that do not concern us). Bloated, argumentative pleadings are a bane of modern practice. *American Nurses' Ass'n v. Illinois*, 783 F.2d 716 (7th Cir.1986). Rule 11 requires not that counsel *plead* facts but that counsel *know* facts after conducting a reasonable investigation—and then only enough to make it reasonable to press litigation to the point of seeking discovery. Rule 11 neither modifies the "notice pleading" approach of the federal rules nor requires counsel to prove the case in advance of discovery. See also *Szabo*, 823 F.2d 1083 (Rule 11 requires only an "outline of a case" before filing the complaint, though it does require enough investigation to discover that outline).

This is a fine line. Rule 11 must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case, yet the need for discovery does not excuse the filing of a vacuous complaint. No matter how such inquiries come out, however, courts must ask the right question: whether the side filing the pleading knew enough at the time, not whether it spread all on the record. Rule 11 states that the signature verifies that the paper is "well grounded in fact", not that all the facts are contained in the paper.

The case is remanded for a further inquiry, under the standards of *Szabo* and *Brown v. Federation of State Medical Boards*, into the support for each of the theories contained in the complaint.

REVERSED AND REMANDED.