Thomas TRULIS; Eamon J. McClory; Erv Grosch; Thomas Swarthout; Al Simon; Tom Ewing; Michael Barrack, Plaintiffs–Appellants,

v.

J. Porter BARTON; Jon T. Brown; Phillip R. Jacoby, Jr., et al., Defendants,

and

Myron Sukut; Carl Berg; Clyde Berg; Berg & Berg Developers; Baccarat Electronics, Inc., Defendants–Appellees.

Thomas TRULIS; Eamon J. McClory; Erv Grosch; Thomas Swarthout; Al Simon; Tom Ewing; Michael Barrack, Plaintiffs–Cross–Appellees,

v.

J. Porter BARTON; Myron Sukut; Jon T. Brown; Phillip R. Jacoby, Jr., et al., Defendants,

and

Carl Berg; Clyde Berg; Berg & Berg Developers; Baccarat Electronics, Inc., Defendants–Cross–Appellants.

Thomas TRULIS; Eamon J. McClory; Erv Grosch; Thomas Swarthout; Al Simon; Tom Ewing; Michael Barrack, Plaintiffs–Cross–Appellees,

Daniel J. Callahan, Cross–Appellee,

v.

J. Porter BARTON, Defendant,

and

Carl Berg; Clyde Berg; Berg & Berg Developers; Baccarat Electronics, Inc., Defendants–Cross–Appellants.

Nos. 94–55024, 94–55049, and 94–55234.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 2, 1995.

Decided Sept. 27, 1995.

Jeffrey S. Benice, Anton M. Rosandic, Benice & Associates, Irvine, California, for appellants-cross-appellees.

Allan Gabriel, Dean B. Herman, Peter Schwartz, Gabriel, Herman & Peretz, Los Angeles, California, for appellees-cross-appellants Carl Berg, Clyde Berg, Berg & Berg Developers and Baccarat Electronics, Inc.

Kathlene W. Lowe, J. Russell Taylor, Jr., Brobeck, Phleger & Harrison, Newport Beach, California, specially appearing for attorney Brobeck, Phleger & Harrison.

Jeffrey S. Benice, Benice & Associates, Irvine, California, specially appearing for Jeffrey S. Benice.

Daniel J. Callahan, Callahan & Gauntlett, Irvine, California, specially appearing for Daniel J. Callahan.

George Dale, Carrick & Dale, Los Angeles, California, for Myron Sukut.

Before FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges.

BRUNETTI, Circuit Judge:

In the primary appeal, we are called on to put an end to a lawsuit that a bankruptcy court in a collateral proceeding has already held is released and barred. In the cross-appeal, we consider how much attorney misconduct a court should tolerate before imposing sanctions.

I.

This case began with the bankruptcy of the Marbella Golf and Country Club (the Country Club), which had operated at a loss since its opening. To fund its operational deficit, the Country Club filed a voluntary bankruptcy petition to restructure the rights of its members. There are several classes of Country Club members: Series A Charter Gold Members, Series B Charter Gold Members, Series C Gold Members, Charter Silver Members, and House Members.

Shortly after the Country Club filed for bankruptcy, Jeffrey S. Benice, then an attorney with Brobeck, Phleger and Harrison, filed the present action on behalf of certain Country Club members. Specifically, the complaint named as plaintiffs Thomas Trulis, Eamon J. McClory, Erv Grosch, Thomas Swarthout, Al Simon, Tom Ewing, and Michael Barrack. Daniel Callahan was originally named as a plaintiff in the action, but his name was removed as a plaintiff when the First Amended Complaint was filed. At that time he became co-counsel with Benice.

The complaint alleged that the Country Club founders, directors, and attorneys (collectively the "Berg Defendants") violated various securities regulations and the Racketeer Influenced and Corrupt Organizations Act, and committed fraud, negligent misrepresentation, breach of contract, and other wrongdoing in connection with the Country Club's inception and operation. The complaint alleged damages estimated at over $10,000,000.00.

Meanwhile, back in the bankruptcy proceeding, a seven-member committee was formed to represent the interests of the Series B members (Committee). The Committee chose the law firm of Paul, Hastings, Janofsky & Walker to represent it. Another committee was formed to represent the interests of the Series A and Silver Members, which chose the law firm of Allen, Matkins, Leck, Gamble & Mallory to represent it.

The Country Club proposed an Initial Plan of Reorganization and filed a Disclosure Statement in the bankruptcy court. The Committee representing the Series B members vigorously opposed this Initial Plan by filing in the bankruptcy court an Objection to the Country Club's Disclosure Statement. The Objection outlined the claims Country Club Members had against the Berg Defendants. One of their more serious grounds for opposition was the plan provisions that released any claims Series B Members might have against the directors and management of the Country Club. So there could be no mistake about what claims they sought to protect from the release provision of the Initial Plan, the Committee attached to its Objection a copy of the First Amended Complaint in this litigation, which was authored by Benice.

The Initial Plan was rejected. Between February and June of 1993, the respective counsel for the Country Club and the members' committees entered negotiations seeking to develop an acceptable reorganization plan. Meanwhile, Benice and Callahan convened a meeting of the Series B members. They advertised the meeting as a question and answer meeting for Series B members regarding the bankruptcy plan. According to one of the attendees, however, the real

purposes of the meeting were to "drum up support for [this] lawsuit[,]" to "convince all 'B' members to vote no on the plan[,]" and to launch "a character assassination of Mr. Berg." To entice those in attendance to join the suit, Callahan suggested that "the lawsuit could be worth up to 20 or even as high as 50 million dollars." He also promised that the case "would not be a drawn out process. 'We can be ready to go to trial in 30 days.'"

The same attendee reported that at the meeting, "Mr. Benice stated that although he was not a member of the club he felt it would be ridiculous for any 'B' member to release and indemnify (give up the right to sue) [sic] the developer." Despite his own warning that the Plan's release provisions would bar them from pursuing this lawsuit, Benice then promised the attendees that even if the Plan passed "his law firm [Brobeck] would take the case on a contingency basis[.]"

Despite Benice and Callahan's efforts, and after another version (the Amended Plan) failed, the various interests in the bankruptcy eventually agreed on the Joint Plan of Reorganization. The Joint Plan proposed creating a new club. Like the proposals that preceded it, the Joint Plan gave members the choice of voting in favor of the Plan and obtaining membership in the new club, or voting against the Plan and relinquishing their membership in return for a promissory note. Members were also offered as a third option, freezing their memberships without paying dues and selling their memberships within seven years. Most importantly, the Joint Plan required, like the versions that preceded it, that those who elected to become a member of the new club release any claims they had against the Berg Defendants.

Six-hundred and eighty-six of the 702 Country Club members, an overwhelming majority, voted to adopt the Joint Plan, including the release provision. Each of the named plaintiffs in this case voted in favor of the Joint Plan.

At about the same time that members were reviewing the Joint Plan and casting their votes in favor of it, most of the named plaintiffs sought to be dismissed from this suit. Despite explicit orders from his clients,

however, Benice never filed any releases on behalf of any of the named plaintiffs.

After the Country Club Members approved the Joint Plan, the bankruptcy court confirmed it in an order stating:

> ... Series B Charter Gold Members who elected to become Series B Gold New Club Members under the Plan and Services B Charter Gold Members who elected to enter into the Membership Freeze Program under the Plan *are hereby deemed to release, and are permanently and forever enjoined and barred from commencing or continuing any action against, the Developer and the Developer Affiliates with regard to any claims* such Series B Charter Gold Members have against such entities, except for Homeowner Claims.

*In re Marbella Golf and Country Club,* No. SA 20014–JB, at 4–5 (Bankr.C.D.Cal.1993) (emphasis added). The bankruptcy court included a virtually identical order pertaining to Series A Members' release of claims. No party to this action appealed from the bankruptcy court's order confirming the Joint Plan.

After confirmation of the Joint Plan, the Berg Defendants wrote to Benice. They demanded dismissal of this suit. The Berg defendants pointed out that the plaintiffs had released their claims by voting for the Joint Plan, that most of the named plaintiffs had sought dismissals, and that the bankruptcy court order confirming the Joint Plan explicitly barred this suit. Benice refused to dismiss the action.

Consequently, the Berg Defendants filed a Motion for Summary Judgment. Undeterred by the release provisions of the Joint Plan and the bankruptcy court's order, Benice opposed the Berg Defendants' motion for summary judgment by arguing that under California law the release provisions in the confirmed Joint Plan were unenforceable. Benice steadfastly maintained that his clients were unaware that adoption of the Joint Plan released the Berg Defendants.

Contrary to Benice's claims of his clients' ignorance, however, at least one of Benice's clients understood the legal significance of the confirmation of the Joint Plan. In support of the Berg Defendants' motion for summary judgment, Trulis attested, "I was aware that as a result of the approval of the Bankruptcy Plan on July 26, 1993, I agreed to release Mr. Berg, related entities and Mr. Sukut from any further litigation relating to Marbella."

In opposition to the Berg Defendants' motion for summary judgment, Benice filed an unsigned document entitled "Declaration of Michael Barrack." The unsigned document declared that "No one has explained the effect of approving the Amended Plan or the release to me." The unsigned document also described that although the would-be signatory was withdrawing from the suit, his decision to withdraw was prompted by pressure from other Country Club members, not his belief the litigation was frivolous. No signed declaration on behalf of any plaintiff was entered into the record in opposition to the Berg Defendants' motion for summary judgment.

In their reply brief, the Berg Defendants submitted a declaration *signed* by Barrack, which stated:

> I have on repeated occasions, beginning in June 1993, requested to be dropped as a plaintiff. It was my explicit understanding that this was done and I had no knowledge of the fact that I remained as a plaintiff.
>
> 3. On November 4, 1993, I was informed by a member of the [Country Club] Board that a declaration had been filed in my name on November 1, 1993. I categorically state that I had no knowledge whatsoever of the content and had never discussed said content with anyone.... I further state that I had never signed such a declaration nor authorized anyone to send a declaration on my behalf to the Court.

After the Berg Defendants filed their papers containing this signed declaration, Benice withdrew the unsigned document purporting to be Barrack's declaration.

In Benice's opposition to the Berg Defendants' motion for sanctions, Benice's associate, Anton Rosandic, stated in an affidavit that Barrack had promised to sign the affidavit and later refused. Additionally, declarations in opposition to the motion for sanctions

stated that Rosandic had spoken with Barrack regarding the declaration Defendants submitted in support of their reply brief and Barrack had stated that the signature on the declaration attached to the Berg Defendants' reply was not his, and that he had not signed any declaration for the Berg Defendants.

The Berg Defendants then filed a third, handwritten declaration by Barrack. This declaration stated, "On November 8 in the presence of Mr. Sukat [sic] I signed a declaration that I prepared as exhibit A. I declare under penalty of perjury ... that the foregoing is true and correct." This declaration cross-referenced and verified the signed declaration originally submitted by the Berg Defendants.

The district court granted the Berg Defendants' motion for summary judgment. After granting the Berg Defendants' motion, the district court denied their request for sanctions in an oral ruling from the bench. Benice appeals the district court's grant of summary judgment,[1] and the Berg Defendants cross-appeal the district court's denial of sanctions. After filing a Notice of Appeal for their cross-appeal, the Berg Defendants filed a second motion for sanctions in the district court, denial of which they also now appeal.

## II.

■ We review de novo the grant of summary judgment. *Red Mountain Mach. Co. v. Grace Inv. Co.*, 29 F.3d 1408, 1410 (9th Cir.1994).

■ The Berg Defendants moved for summary judgment based on the release provisions contained in the Joint Plan and the bankruptcy court's confirmation order. Confronted with this motion, Benice fashioned state contract law arguments that the release provisions were unconscionable, lacked consideration, and were executed under duress and in breach of fiduciary duties. The district court held that none of these arguments were sufficient to invalidate the release provisions. However, we can affirm the district

court's grant of summary judgment on any basis supported by the record. *See Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1484 (9th Cir.1994). We conclude that the Berg Defendants were entitled to summary judgment because Benice failed to challenge the Joint Plan on direct appeal and res judicata principles preclude collateral attack.

■ Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect. *See* 11 U.S.C. § 1141(a). Res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits in a previous action involving the same parties and claims. *In re Intl Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994). Since the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter. *See Stoll v. Gottlieb,* 305 U.S. 165, 171–72, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir. 1987). In other words,

> [C]reditors who do not wish to release third party debtors pursuant to the principal debtor's plan of reorganization should object to confirmation of the plan on the ground that such a plan provision is violative of section 524 and not within the power, even jurisdiction, of the bankruptcy court.... *The point is that only a direct attack is available and collateral attack is unavailable.*

**5 Collier on Bankruptcy** ¶ 1141.01[1] (Lawrence P. King, ed., 15th Ed. 1995) (emphasis added). The release provisions and the bankruptcy court order expressly apply to the same parties and claims as the present suit. The bankruptcy court order confirming the Joint Plan clearly stated that members of

---

1. Although the complaint named other defendants in addition to those in favor of whom the district court granted summary judgment, Benice represented to this court, and the record reflects, that none of the other defendants were served.

Consequently, summary judgment in favor of the Berg Defendants, the only served defendants, was a final judgment for the purpose of appeal, and we have jurisdiction.

each class who elected to become members of the new club, which each plaintiff in this case did, release all claims against the Berg Defendants. Since the bankruptcy order confirming the Joint Plan applied to the same claims and parties involved in this litigation, this suit is barred by *res judicata* and summary judgment was appropriate.

### III.

We now turn to the issues of attorney misconduct and the district court's failure to impose sanctions. The Berg Defendants brought two motions for sanctions, the first based on violations of 28 U.S.C. § 1927, and the second based on Fed.R.Civ.P. (Rule) 11 and the inherent powers of the court. We address these motions in turn.

### A.

■ Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs." 28 U.S.C. § 1927. We review the district court's denial of § 1927 sanctions for abuse of discretion. *Air Separation v. Lloyd's of London*, 45 F.3d 288, 291 (9th Cir.1995).

■ When ruling on the Berg Defendant's motion, the district court did not address or inquire into any of the abuses pointed out by the Berg Defendants. Instead, the district court simply stated, "They took a position; you took a position. I don't think its an unreasonable position that they took. I think the evidence, you know supports your side in this particular case, and I'm not going to award sanctions." The only other comment by the district court was "I don't believe this is a case for sanctions and I will not award sanctions in this matter." This finding, and the district court's failure to address the alleged misconduct, was an abuse of discretion.

### 1.

■ We first address the district court's failure to award sanctions even though Ben-

ice vexatiously continued this suit after the order confirming the Joint Plan explicitly barred it. As we explained in Section II., the law governing the preclusive effect of confirmed bankruptcy plans is clear and unequivocally bars this suit. We are unpersuaded that Benice's arguments before the district court dignified this case as anything more than vexatious continuation of a case that had been clearly precluded. The only evidence in the record is that Benice and his purported clients actively participated in the bankruptcy proceedings through effective legal counsel, and that they were well aware of the release provisions in the Joint Plan. We find that under these circumstances maintenance of this suit after the confirmation of the Joint Plan was reckless as a matter of law and vexatiously multiplied the proceedings in violation of § 1927. *Cf. In re Peoro*, 793 F.2d 1048, 1051 (9th Cir.1986) (affirming award of sanctions under § 1927 against party who attempted to relitigate the validity of his lien, which a bankruptcy court had previously held was void). The district court abused its discretion by denying the Berg Defendants' motion for sanctions with regard to this issue.

### 2.

■ We now turn to the various so-called Barrack declarations. It is clear that someone—Benice and his associates, the Berg Defendants, or Barrack himself—has made misrepresentations. Either Benice and Rosandic misrepresented that Barrack authorized the unsigned declaration, the Berg Defendants misrepresented that Barrack signed the declaration proffered by them, or Barrack made misrepresentations in the declarations he signed. They simply cannot all be telling the truth.

This is not a case in which parties have taken opposing positions regarding the interpretation of ambiguous facts. Nor is it an example of an advocate "coloring" facts to present his or her case in the best possible light. These violations did not arise from a sole practitioner's inexperience, but are the product of lawyers practicing at large, well-equipped law firms. *Cf.* William W Schwarzer, *Sanctions Under the New Federal Rule*

*11—A Closer Look,* 104 F.R.D. 181, 183 (1985). At least one person necessarily made deliberate misrepresentations, signed and in writing, to the district court.

The problem is that it is unclear exactly who is guilty of this misconduct. However, this uncertainty did not relieve the district court of its obligation to assess the validity of the Berg Defendants' claim for sanctions under § 1927. *Cf. Frantz v. U.S. Powerlifting Federation,* 836 F.2d 1063, 1066 (7th Cir. 1987) (when assessing a motion for sanctions "[t]he absence of ineluctable answers does not imply the privilege to indulge in an unexamined gestalt.").

■ The district court abused its discretion by failing to address this matter in its consideration of sanctions, and we therefore remand for further findings. If Benice and his associates were responsible for the falsehoods involved in the Barrack declarations, then the district court should determine whether to grant the Berg Defendants' motion and award appropriate sanctions. Conversely, if the district court finds that the misrepresentations are attributable to either the Berg Defendants or Barrack himself, the district court can award such sanctions as it deems appropriate. *See Mark Indus., Ltd. v. Sea Captain's Choice,* 50 F.3d 730, 732–33 (9th Cir.1995).

### 3.

■ We now consider the district court's failure to address in its denial of sanctions the various named plaintiffs' requests to be dismissed from the suit and Benice's refusal to do so. The Berg Defendants presented *uncontroverted* evidence that at least five out of seven of the named plaintiffs demanded that they be dismissed from the suit.

Trulis attested that in June of 1993 he had "talked to Mr. Jeffrey Benice and Mr. Daniel Callahan requesting dismissal.... Mr. Callahan had assured [him that he] was no longer a plaintiff in the case." Trulis' affidavit also stated that he had "received a letter confirming that [he] was no longer a plaintiff[,]" and that "Mr. Benice was not authorized to continue the litigation on [his] behalf ... after June, 1993."

Similarly, Ewing wrote to Benice formally requesting that Benice dismiss him as a plaintiff on June 7, 1993. To be certain that Benice respected his command, Ewing requested that Benice "indicate receipt of this letter [instructing Benice to remove him as a plaintiff] and compliance with these instructions by signing where indicated below and returning a copy to me for my file." Evidently unable to obtain a response from Benice, Ewing resent the same letter to Benice, this time inscribed with a hand-written note emphasizing "*I WANT OUT* OF THE LAWSUIT AS A PLAINTIFF. PLEASE SIGN AND RETURN A COPY ACKNOWLEDGING MY INSTRUCTIONS." Benice finally responded to Ewing, assuring that he would "file a Request for Dismissal without prejudice of you as a party plaintiff in the class action on Monday June 14, 1993."

On March 21, 1993, Grosch requested that Benice "immediately take whatever steps are necessary to remove [him] as a plaintiff from this suit." On May 17, 1993, Callahan wrote to Benice informing him of Swarthout's insistence that he be removed as a plaintiff. There is no evidence that McClory instructed Benice to dismiss him, but Benice represented to the Berg Defendants that he was preparing a notice of dismissal on behalf of McClory, along with those for Grosch and Swarthout. The only named plaintiff who, according to the record, never requested dismissal, or on whose behalf Benice never purported to prepare a dismissal, was Simon.

Nevertheless, well after their requests to be dismissed Benice continued to file documents in the district court bearing the names of these plaintiffs and the Notice of Appeal Benice filed in this Court states that this appeal is taken on behalf of Trulis, McClory, Grosch, Swarthout, Simon, Ewing, and Barrack. Benice has never amended his Notice of Appeal nor indicated to this court that he is no longer authorized to represent those parties named in his Notice of Appeal. No dismissals appear in the record. Notably, however, the opening brief on appeal designates only a single appellant, Simon.

It is axiomatic that an attorney cannot continue to represent a client in a lawsuit in contravention of that client's explicit instruc-

**788**

tion to the contrary. *See* Model R.Prof. Cond. 1.2 ("A lawyer shall abide by a client's decisions concerning the objectives of representation[.]"); Comment to Model R.Prof. Cond. 1.2 ("The client has ultimate authority to determine the purposes to be served by legal representation[.]"). The uncontroverted evidence establishes that Benice intentionally disregarded his clients' explicit instructions regarding dismissal and filed documents, including the notice for this appeal, which he was not authorized to file on their behalf.

In an effort to justify his decision to disregard his clients' instructions and his representations to the Berg Defendants, Benice submitted a declaration, stating:

> The reason I have not yet filed a motion to dismiss those Plaintiffs from this case ... is my concern that Berg will pursue malicious prosecution or similar claims against my clients, unless I can first obtain a release from all the Berg Defendants....

This argument is unavailing. The only way Benice could justify his conduct is by showing that upon such advice from Benice, his clients had a change of heart or altered their instructions to him. *See Foothills Dev. Co. v. Clark County Bd.*, 46 Wash.App. 369, 730 P.2d 1369, 1373 (1986) (attorney must follow client's specific instructions). Benice has not even suggested that such evidence exists. Therefore, Simon (and perhaps McClory) were the only named plaintiffs Benice was authorized to represent after June 1993, and consequently the only names Benice was authorized to include on his filings in the district court and this court.

■ District courts enjoy much discretion in determining whether and how much sanctions are appropriate. *Frantz*, 836 F.2d at 1066. However, "[d]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975)) (additional internal quotation omitted). In this case, however, the district court

failed to provide any explanation, sound or unsound, for its denial of sanctions.

"Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir.1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (quoting *Estate of Blas*, 792 F.2d 858, 860 (9th Cir.1986)) (additional internal quotation omitted). Since there are no disputed facts regarding this issue, we find that Benice's intentional disregard of his clients' express instructions and his continued insistence that he represented persons who he was not authorized to represent was reckless as a matter of law. That reckless conduct vexatiously increased the scope of this litigation in violation of § 1927. The uncontroverted facts demonstrate subjective bad faith as a matter of law. We therefore reverse the district court's denial of sanctions, and remand for findings regarding the appropriate amount of sanctions. The district court should determine on remand what additional costs the Berg Defendants incurred by defending what was ostensibly a multi-plaintiff class action [2] instead of a single- or two-plaintiff lawsuit.

### 4.

■ The Berg Defendants also requested sanctions on the ground that Callahan made misrepresentations to the bankruptcy court when he attested in an affidavit filed in the bankruptcy court that two lawsuits, including this action, had been filed against the Berg Defendants. At the time, none of the Berg Defendants had been named in either of the lawsuits. We do not consider the merits of this claim because the district court did not have power to sanction conduct that occurred in a different court in a different case. *See GRiD Systems Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir.1994); *accord In re Peoro*, 793 F.2d at 1051 (affirming imposition of sanctions awarded by district courts reviewing appeals from bankruptcy proceedings).

**2.** Although the complaint purports that the plaintiffs named constitute certifiable classes under

Rule 23, no motion to certify was ever brought under Local Rule 18.3.

## B.

■ We now turn to the Berg Defendants' appeal from denial of their second motion for sanctions, which was filed after they filed their Notice of Appeal from denial of their first motion for sanctions. The second motion sought sanctions under the district court's inherent powers and Rule 11.

With the exception of one allegation, we do not consider the merits of the Berg Defendants' second motion for sanctions because the district court did not have jurisdiction to consider that motion. As noted, the Berg Defendants filed their second motion after they had already filed a Notice of Appeal from denial of their first motion for sanctions. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982).

In reviewing the Berg Defendants' second motion, the district court found that "[i]n the [second] motion, the Moving Defendants present essentially the same arguments as those already considered and rejected by this Court on November 15, 1993." *Trulis*, No. 92–587 DT (Tx), at 14 n. 5. The Berg Defendants' proffer of new legal bases for sanctions does not change the fact that the allegedly sanctionable conduct underlying both motions was identical. *See United States v. Kersting (Two Cases)*, 891 F.2d 1407, 1413 (9th Cir.1989) (finding that motion for discovery brought after notice of appeal directly related to good faith, an issue on appeal, and

therefore was beyond the district court's jurisdiction), *cert. denied*, 498 U.S. 812, 111 S.Ct. 49, 112 L.Ed.2d 25 (1990). Most of the issues raised in the Berg Defendants' second motion asked the district court to reconsider matters that were involved in the appeal and beyond the district court's jurisdiction.

■ The only issue in the Berg Defendants' second motion that was not part of the appeal from denial of their first motion was their allegation that Benice attempted to bribe Barrack into signing his declaration. *Trulis*, No. 92–587 DT (Tx), at 14 n. 5. Since that issue involves an allegation of new sanctionable conduct, which was not part of the Berg Defendants' cross-appeal from denial of their first motion, the district court had jurisdiction, and we review the district court's consideration of it.

■ We review the district court's failure to impose sanctions pursuant to Rule 11 and the court's inherent powers for abuse of discretion. *See Mark Indus., Ltd.*, 50 F.3d at 732.

■ In their second motion for sanctions, the Berg Defendants alleged that Benice and his associates attempted to bribe Barrack into signing his declaration by offering him $10,000. Benice and his associates denied these allegations of attempted bribery, stating that they merely informed Barrack that he might be abandoning his claim to settlement proceeds.

Rule 11 sanctions are not an appropriate remedy for this alleged misconduct since they are only available with regard to papers filed with the court, not attorney misconduct. Fed.R.Civ.P. 11;[3] *see also United Energy*

---

3. Rule 11 was amended effective December 31, 1993. The prior version, which was in effect when the conduct at issue here occurred, provides in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record and in the attorney's individual name[.] .... [T]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. .... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
Fed.R.Civ.P. 11 (1983).

*Owners Comm., Inc. v. United States Energy Management Systems, Inc.,* 837 F.2d 356, 364–65 (9th Cir.1988).

The district court could have awarded sanctions based on its inherent powers. When it denied sanctions, however, the district court gave no explanation for its decision. Instead, the district court merely reiterated both parties' arguments and summarily concluded that it "remain[ed] unwilling to award sanctions in this matter." *Trulis,* No. 92–587 DT (Tx), at 14. Like the district court's other rulings, this explanation is insufficient. "[A]n explanation need not be complex, and a judge need not pretend that there is a single right answer that can be reached by deductive logic or defended with precision." *Frantz,* 836 F.2d at 1066. However, *some* explanation or indication of the basis for the district court's decision is necessary. We therefore remand this issue of sanctions for the district court to reconsider its denial of sanctions.[4]

### IV.

Although the sanctions in this case are payable to the Berg Defendants, the real cost of Benice's misconduct, and of most attorney misconduct, is borne by the clients and the legal profession as a whole. At a time when public confidence in the legal profession has already been severely eroded, courts cannot further jeopardize that confidence by condoning such egregious and pervasive attorney misconduct. The district court, in considering sanctions, should also determine whether reference of any of the lawyers involved to the appropriate disciplinary authorities is warranted.

For the reasons stated in sections III.A.1. and III.A.3., we find that sanctions are also appropriate on appeal under Fed. R.App.P. 38 and § 1927, respectively. On remand the district court shall fix appropriate attorneys fees on appeal. The district court's grant of summary judgment is AFFIRMED; denial of the Berg Defendants' first motion for sanctions is REVERSED and REMANDED; and denial of the Berg Defendants second motion for sanctions is VACATED IN PART for lack of jurisdiction, and REMANDED IN PART.

---

4. The Berg Defendants did not seek sanctions against the Brobeck law firm until their second motion. Therefore, the bribery allegation is the only one the Berg Defendants properly asserted against Brobeck. On remand, if the district court finds that sanctions are warranted with respect to the bribery allegation against Benice, it may consider whether sanctions against Brobeck are also appropriate.