F I L E D
**United States Court of Appeals
Tenth Circuit**

**August 30, 2006**

**Elisabeth A. Shumaker
Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES F. KEARNEY,

      Plaintiff-Appellee-Cross-
      Appellant,

v.

VINCENT DIMANNA; KEN A.
OVERMAN; MARK HANEY;
FRANK J. VESSA, SR.; ANTHONY
P. IACOVETTA; JIMMY J. GOSE;
THOMAS S. LAHEY; JAMES R.
SMITH; KENNETH C. PADGETT;
GEORGE A. GRAY; STEVEN W.
PANCK; PAUL M. PAZEN; JESUS
QUINONES; DOUGLAS BRADER;
ANDREW A. RAMIREZ; DAVID
NEIL, individually and as Director of
the Police Protective Association of
the City and County of Denver;
MARTIN VIGIL, individually and as
Director of the Police Protective
Association of the City and County of
Denver; JONATHYN PRIEST; AMY
MARTIN, M.D.; DAVID J. BRUNO;
BRUNO, BRUNO & COLIN, P.C.;
MICHAEL STACK, individually and
as an Officer and Director of the
Police Protective Association of the
City and County of Denver;
BERNARDO ARABALO, individually
and as an Officer and Director of the
Police Protective Association of the
City and County of Denver; JOHN
WYCKOFF, individually and as an

No. 04-1439, 04-1443
(D.C. No. 03-CV-146)
(D. Colo.)

Officer and Director of the Police Protective Association of the City and County of Denver; KIRK MILLER, individually and as an Officer and Director of the Police Protective Association of the City and County of Denver; KENNETH CHAVEZ, individually and as an Officer and Director of the Police Protective Association of the City and County of Denver; MARCO K. VASQUEZ; MICHAEL QUINONES; THOMAS DAVID SANCHEZ; DAVID ABRAMS; GERALD R. WHITMAN; TIMOTHY LEARY; DAVID THOMAS; STEVEN EVANS; WILLIAM MITCHELL,

      Defendants-Cross-Appellees,

and

POLICE PROTECTIVE ASSOCIATION OF THE CITY AND COUNTY OF DENVER,

      Defendant-Appellant-Cross-Appellee.

---

## ORDER AND JUDGMENT[*]

---

Before **BRISCOE**, **McKAY**, and **EBEL**, Circuit Judges.

---

[*]This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

James Kearney, a private investigator, brought this civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, against thirty-four individual defendants, a law firm, and a non-profit corporation (collectively, "Defendants"). The district court granted motions by all Defendants to dismiss for failure to state a claim, but denied a motion by one Defendant for sanctions against Kearney. We affirm the dismissal of Kearney's claims but reverse and remand on the issue of sanctions.

## I. BACKGROUND[1]

On September 29, 1999, a SWAT team from the Denver Police Department entered Ismael Mena's residence pursuant to a "no-knock" search warrant that mistakenly listed Mena's address instead of the "crack house" next door. During the raid, Mena was shot and killed. Although there was an initial cover-up, the fact that the SWAT team had raided the wrong house was anonymously leaked to the media and publicized in November 1999.

An attorney for Mena's family hired Plaintiff Kearney, a former F.B.I. agent, to investigate the killing. Kearney investigated and concluded that Mena had been unarmed and that the SWAT team members had initially shot him solely

---

[1]Because the district court granted Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6), we recite the facts as alleged in the complaint and assume for purposes of this appeal that they are true. See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1123 (10th Cir. 2005).

because they overreacted to the situation. Kearney further concluded that when the SWAT team members realized that they had raided the wrong house and nearly killed an unarmed man, they decided to cover up the truth: the SWAT team shot Mena again, killing him, then altered the crime scene to look as if Mena had been shooting at them. According to Kearney, the police department then engaged in a two-month cover-up of the true nature of Mena's death.

Kearney attempted to convince both a special prosecutor and the F.B.I. of his conspiracy theory, but was essentially ignored. He therefore began to publicize his allegations during appearances on a Denver radio talk show. Defendants realized that Kearney posed a threat as a potential expert witness against them and began to discuss how to silence him. Eventually, the Police Protective Association of the City and County of Denver ("PPA") and its members conspired with attorney David Bruno and his law firm to intimidate Kearney by filing a defamation lawsuit against Kearney, the talk show host, and the radio station. The PPA funded the lawsuit, Bruno represented the defamation plaintiffs, and many Defendants participated by giving false or misleading deposition testimony. After the radio station and talk show host agreed to settle the case, Defendants voluntarily dismissed the entire defamation lawsuit, including all claims against Kearney — who had refused to settle. Kearney nonetheless alleges that the lawsuit "injured him professionally, personally, and economically, and his [sic] business and business reputation."

Kearney thereafter filed the present suit against Defendants, alleging RICO, RICO conspiracy, and state law claims. The district court granted Defendants' motions to dismiss Kearney's RICO claims under Rule 12(b)(6) because: (1) he "failed to show that he has standing to pursue the RICO claims"; (2) his "definition of the criminal enterprise is not different from his allegations of a pattern of racketeering activity"; (3) he lacked "support for a valid claim of an effect on interstate commerce"; and (4) "[t]he conspiracy claim is insufficient because the . . . RICO violations . . . have not been adequately alleged." Because there were no remaining federal claims, the district court dismissed Kearney's state law claims under Rule 12(b)(1) for lack of jurisdiction.

During the litigation, Defendant PPA sought Rule 11 sanctions against Kearney. The district court, however, declined to separate the federal claims from the unresolved state law claims for sanctions purposes and therefore denied the request. PPA appeals the denial of its motion for sanctions and Kearney cross-appeals the dismissal of his RICO and RICO conspiracy claims.

## II. DISCUSSION

### A. Dismissal of Kearney's RICO Claims

As explained above, the district court dismissed Kearney's RICO and RICO conspiracy claims (together, "RICO claims") on numerous grounds. Because we agree that Kearney failed to plead an enterprise distinct from the pattern of racketeering activity, we need not address the other grounds for dismissal.

### 1. Standard of review

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim. Sutton v. Utah State Sch. for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). In our review, we accept all well-pleaded factual allegations as true and view them in the light most favorable to the nonmoving party. Id. at 1236. "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quotation omitted).

### 2. Enterprise

Subsection 1962(c) of RICO makes it

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Subsection 1962(d) makes it "unlawful for any person to conspire to violate" subsection 1962(c). Id. § 1962(d). RICO provides a private civil cause of action for those who are injured by violations of § 1962 and allows for recovery of treble damages, costs, and attorney fees. Id. § 1964(c).

"To successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Robbins v. Wilkie, 300 F.3d 1208, 1210 (10th Cir. 2002) (quotation omitted). The second RICO element, an enterprise, "includes any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Despite the apparent breadth of this definition, to properly plead an enterprise a plaintiff must allege three components: (1) that there is "an ongoing organization with a decision-making framework or mechanism for controlling the group," (2) "that various associates function as a continuing unit," and (3) "that the enterprise exists separate and apart from the pattern of racketeering activity." United States v. Smith, 413 F.3d 1253, 1266–67 (10th Cir. 2005) (quotations omitted).

We conclude that Kearney has failed to allege the third component — existence of an enterprise "separate and apart from the pattern of activity in which it engages." United States v. Turkette, 452 U.S. 576, 583 (1981). Kearney's amended complaint merely states, in relevant part:

> This Complaint's foundational claims are abuse of legal process and malicious prosecution of KEARNEY by the SWAT Team defendants with the direct assistance and aid of the other defendants . . . .
>
> At all relevant times, the defendants acted as a group of persons associated together in fact for the common purpose of maliciously prosecuting KEARNEY, and thereby abusing legal process, obstructing justice, and conspiring to commit and committing perjury. Therefore, their conduct as such constitutes an association-in-fact "enterprise" within the meaning of RICO . . . .

Compl. at 49–50.

It is clear from these assertions that the alleged enterprise and the alleged pattern of racketeering activity are the same. Kearney claims that the Defendants

associated in fact to obstruct justice by maliciously prosecuting him, but there is no indication that the "association" had any existence or purpose outside of the alleged malicious prosecution and intimidation of Kearney to prevent him from continuing to expose the supposed illegal activity and cover-up pertaining to Mena's death. See United States v. Cianci, 378 F.3d 71, 82 (1st Cir. 2004) ("[C]riminal actors who jointly engage in criminal conduct that amounts to a pattern of 'racketeering activity' do not automatically thereby constitute an association-in-fact RICO enterprise simply by virtue of having engaged in the joint conduct. Something more must be found—something that distinguishes RICO enterprises from ad hoc one-time criminal ventures."); Montesano v. Seafirst Commercial Corp., 818 F.2d 423, 427 (5th Cir. 1987) ("[I]ndividuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two [or more] predicate acts during the commission of this offense, because their relationship to one another has no continuity."). Simply put, Kearney's allegations fail to show that, in the absence of the alleged malicious prosecution and scheme of intimidation against him, there would have been any association-in-fact at all among the Defendants. See Handeen v. Lemaire, 112 F.3d 1339, 1352 (8th Cir. 1997) ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from

-8-

the equation."). Therefore, Kearney has failed to properly plead an enterprise,[2] and his RICO claims were properly dismissed.[3]

## B. Rule 11 Sanctions

We now turn to the second issue in this case: whether the district court properly denied Defendant PPA's motion for sanctions against Kearney. We conclude that the denial was improper and remand for further consideration.

### 1. Standard of review

"All aspects of the district court's Rule 11 determination are reviewed for abuse of discretion, which is shown if the district court based its ruling on an

---

[2]In his response to Defendants' motions to dismiss, Kearney claimed that "the Denver Police Department and those closely affiliated with it is the enterprise." On appeal, he asserts that there were *four* enterprises: the Bruno law firm, the PPA, the Denver Police Department, and the association-in-fact of all Defendants. We decline to consider these claims because they were not pleaded in the complaint. "It is well-established . . . that in determining whether to grant a motion to dismiss, the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995); see also Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

[3]Because dismissal of Kearney's § 1962(c) claim was proper, dismissal of his RICO conspiracy claim was therefore also proper. See Tal v. Hogan, 453 F.3d 1244 at 1270 (10th Cir. 2006) ("By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)."); Condict v. Condict, 826 F.2d 923, 927 (10th Cir. 1987) ("[A]ny claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive claims are themselves deficient.").

erroneous view of the law or on a clearly erroneous assessment of the evidence."

Barrett v. Tallon, 30 F.3d 1296, 1301 (10th Cir. 1994) (quotation omitted).

### 2. Analysis

The district court denied PPA's motion for sanctions against Kearney,

concluding that

> [t]he insufficiency of the federal claims does not warrant a determination that sanctions should be imposed. That would require a separation of the federal claims from the state claims and this court has no basis for determining that none of the state claims made against PPA could be supported by evidence if those claims were fully litigated. This court has no basis for making a Rule 11 determination with respect to the state law claims and is unwilling to separate them for this purpose.

We agree with the PPA that the district court made "the erroneous legal

assumption that the sanction analysis for the dismissed federal claims . . . was

somehow dependent on either the validity or the adjudication of the state law

claims."

> Subdivision (b) of Rule 11 provides, in relevant part, that
>
> [b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
> . . .
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

-10-

Fed. R. Civ. P. 11(b). Rule 11 further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Id. at 11(c).

In Dodd Insurance Services, Inc. v. Royal Insurance Company of America, 935 F.2d 1152 (10th Cir. 1991), we noted a circuit split as to the proper interpretation of Rule 11:

> Some courts have interpreted Rule 11 narrowly, suggesting that sanctions are inappropriate when a pleading contains both valid and frivolous claims. See, e.g., FDIC v. Tekfen Constr. & Installation Co., 847 F.2d 440, 444 n.6 (7th Cir. 1988) ("[E]ven if this minor argument were off the mark, the fact that one argument in an otherwise valid paper is not meritorious" does not warrant Rule 11 sanctions.); Burull v. First Nat'l Bank of Minneapolis, 831 F.2d 788, 789 (8th Cir. 1987) (lawsuit containing meritless and factually groundless claims did not mandate Rule 11 sanctions because complaint, "taken as a whole, was legally and factually substantial enough to reach a jury"), cert. denied, 485 U.S. 961 (1988); Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1540 (9th Cir. 1986) ( "Rule [11] permits the imposition of sanctions only when the 'pleading, motion, or other paper' itself is frivolous, not when one of the arguments in support of a pleading or motion is frivolous."). Other courts interpret Rule 11 more broadly, finding that it may be violated by a pleading containing a single frivolous claim. See, e.g., Cross & Cross Properties v. Everett Allied Co., 886 F.2d 497, 504 (2d Cir. 1989) ("[T]o adopt a standard that would deny sanctions for a significant and obviously meritless claim simply because the rest of the pleading was sound strikes us as contrary to this court's established reading of Rule 11."); Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988) ("Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions."); Frantz v. United States Powerlifting Fed'n, 836 F.2d 1063,

1067 (7th Cir. 1987) ("Rule 11 applies to all statements in papers it covers. Each claim must have sufficient support; each must be investigated and researched before filing.").

Id. at 1158. We chose in Dodd to follow the broader interpretation of Rule 11 and therefore held "that a pleading containing both frivolous and nonfrivolous claims may violate Rule 11." Id. We firmly stated that "[t]o conclude otherwise would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that the weight of his meritorious claim(s) would shield him from sanctions." Id. (quotation omitted).

We conclude that Dodd is controlling in this case. The district court essentially declined to consider whether the insufficiency of Kearney's RICO claims merited sanctions because it was unwilling to "separat[e]" those claims from Kearney's other — potentially meritorious — state-law claims. Yet Dodd specifically held that proper application of Rule 11 requires evaluating claims individually for sanctions purposes. This comports with the plain language of the Rule, which speaks in terms of "claims" and "legal contentions." Fed. R. Civ. P. 11(b)(2). Each claim must be individually evaluated and the merit, or potential merit, of one legal claim does not diminish the command of Rule 11 that *each* claim have the necessary legal support.

Kearney argues that the district court's refusal to separate the claims was proper because his state-law claims were "at the heart" of his RICO claims. We

do not think that relatedness matters. Although there are, not surprisingly, many similarities between the state and federal causes of action asserted by Kearney, RICO contains special requirements that do not apply to the state law claims. Therefore, even if Kearney were to prevail on his state-law claims, that would be quite irrelevant to the question of whether the federal claims — with their unique requirements — were warranted and nonfrivolous.

We emphasize that our decision, of course, should not be taken as a conclusion that sanctions are merited in this case; that is a decision for the district court to make in the first instance. Our conclusion is simply that the district court "based its ruling on an erroneous view of the law," Barrett, 30 F.3d at 1301 (quotation omitted), and thereby abused its discretion. Consequently, we remand for the district court to address whether sanctions are merited.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of Kearney's RICO claims but REVERSE the district court's decision on sanctions and REMAND for a determination of whether sanctions are merited.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge